MATTER OF MASSON

In Deportation Proceedings

A-13322900

*Decided by Board March 25, 1968*

Respondent, a native of Cuba, who in 1936 at age 7 was taken by his parents
to Haiti, the country of his citizenship, where he lived until his admission into
the United States as a visitor on July 5, 1964, is statutorily eligible for adjust-
ment of status under the provisions of section 1 of the Act of November 2,
1966, notwithstanding he is not a refugee.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Visitor for
pleasure—remained longer.

ON BEHALF OF RESPONDENT: Albert J. Geduldig, Esquire
84 William Street
New York, New York 10038

The proceedings have been certified to us by the special inquiry officer
for review and final decision. Respondent has been under a final order
of deportation since June 24, 1965. At a reopened hearing on March 14,
1967 respondent submitted an application on Service Form I-485A
for adjustment of status to that of a permanent resident under the
Act of November 2, 1966 (P.L. 89-732). His application for
permanent residence was approved by the special inquiry officer who
thereafter certified the case to us.

Respondent is a 39-year-old married male alien, a native of Cuba
and a citizen of Haiti. He was born in Cuba, but at the age of seven, in
1936, he was taken to Haiti by his parents, where he lived until entering
the United States at San Juan, as a visitor on July 5, 1964. Deport-
ability is conceded and thus is not in issue.

The sole question presented is whether respondent, who is a native
of Cuba but who is not a *refugee*, is eligible to have his status adjusted
under the Act of November 2, 1966. Respondent's "Application by
Cuban Refugees for Permanent Residence" is filed under the provi-
sions of Section 1 of the Act of November 2, 1966 which states as
follows:

Notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959, and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission for permanent residence as of a date 30 months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later. The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States.

It seems clear as pointed out by the special inquiry officer that the purpose of the Act of November 2, 1966 was to grant benefits to those Cubans who had fled as refugees from the Fidel Castro government of Cuba, Indeed, the bill enacted into law was headed "CUBAN REFUGEES-STATUS." A careful review of the legislative history of the Act as contained in U.S. Code Congressional and Administrative News, 1966, Volume three, starting at page 3792, refers constantly to granting relief to Cuban refugees.

However, the exact wording of the Act is specific, clear and unambiguous in stating that the status of *any alien* who is a native or citizen of Cuba and who has been inspected and admitted, *etc.*, is entitled to the benefits of the Act. Nowhere in the Act itself is the word "refugee" used. Respondent is a native of Cuba; he was inspected and admitted to the United States subsequently to January 1, 1959, and has been physically present in the United States for at least two years, and meets the other requirements of section 1 of the Act of November 2, 1966 as set forth above. When the exact wording of the Act itself does not limit the benefits provided therein to refugees we do not believe it is possible for us to read such word into the Act simply by referring to the alleged purposes of the Act, and the legislative history thereof.

For these reasons we will affirm the order of the special inquiry officer granting respondent's application for adjustment of status to that of a permanent resident under the Act of November 2, 1966.

ORDER: It is directed that the order of the special inquiry officer of January 19, 1968 granting respondent permanent residence under the Act of November 2, 1966 (P.L. 89-732), be approved.