MATTER OF DAMIOLI

In Section 248 Proceedings

. A-22622403

*Decided by the Commissioner January 18, 1980*

Native born United States citizen who is a dual national of the United States and Italy by marriage and operation of foreign law is statutorily ineligible to confer treaty trader status on alien beneficiary employed by her firm where she has chosen to assert her United States citizenship as the predominant nationality by various actions taken to benefit the conduct of her business.

ON BEHALF OF PETITIONER: Stanley Mailman, Esquire
1290 Avenue of the Americas
New York, New York 10019

This matter is before the Commissioner on certification, as provided by 8 C.F.R. 103.4, for review of the Regional Commissioner's order sustaining the District Director's decision to deny the application for change of nonimmigrant status.

The applicant is a 27-year-old native and citizen of Italy who entered the United States on July 15, 1978, as a visitor for pleasure authorized to remain until September 30, 1978. On September 25, 1978, the applicant submitted an application for change of nonimmigrant classification to that of treaty investor. This classification was sought to enable the applicant to assume duties as director and manager of a United States enterprise in the Virgin Islands which charters vessels used for fishing, scuba diving, tours and other water sports and activities. This enterprise, which is incorporated under United States law, is wholly-owned by an individual who is a native-born United States citizen, and who also claims to be a citizen of Italy through marriage and operation of Italian law.

The application for change of nonimmigrant classification to treaty investor was approved by the District Director on September 29, 1978. Shortly after the approval, however, the District Director determined that the applicant was not in fact eligible for treaty investor status because the owner of the enterprise was a United States citizen, and

303

that the approval was therefore in error. On the same day, the applicant was requested to return to the Immigration and Naturalization Service office at which time the adjudicating officer voided the approval by obliterating his previous endorsements of the applicant's application, arrival/departure record, and passport. The applicant was informed that the case would be reviewed further before final disposition.

On October 3, 1978, a notice of denial was apparently issued by the District Director and mailed to the applicant through the Attorney of Record. Though this denial is referred to by both the applicant and the District Director, it does not appear in the record. There does appear in the record a denial dated November 2, 1978, in which the District Director sets forth two reasons for denying the application:

1. That the applicant could not qualify as a treaty investor under section 101(a)(15)(E)(ii) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(E)(ii), as amended, because he had neither invested nor was in the process of investing any capital in the subject enterprise; and

2. That the applicant could not qualify for treaty investor status under 22 C.F.R. 41.41 as an employee of an organization which is principally owned by a person having the nationality of the treaty country, because the owner of the involved enterprise is a United States citizen.

On November 9, 1978, the District Director moved for reconsideration of his earlier approval in view of his subsequent finding that the applicant was ineligible for treaty investor status. For basically the same reasons as identified in his denial of November 2, 1978, the District Director ordered that the case be reopened, that the approval of September 29, 1978, be rescinded, and that the denial of October 3, 1978, be held in abeyance pending submission of countervailing evidence by the applicant as to why such denial should not stand. In response, the applicant argued that the District Director's motion was procedurally and substantively defective because, among other things, the District Director cannot be considered "an affected party" under 8 C.F.R. 103.5, and because the motion set forth no new evidence establishing the applicant's ineligibility for treaty investor status. On December 11, 1978, the District Director denied the application and certified the case to the Regional Commissioner for review.

The applicant appealed the District Director's October 3, 1978, denial to the Regional Commissioner on November 13, 1978, arguing that there is no provision under section 248 of the Immigration and Nationality Act, 8 U.S.C. 1258, to rescind an approved change of nonimmigrant classification, and that he was in any event eligible for treaty investor status on the basis of his employment by an organization which is principally owned by a person having the same nationality of the treaty country. On January 29, 1979, the Regional Commissioner

304

dismissed the applicant's appeal, ruling that 8 C.F.R. 103.5 does give the District Director the authority to reopen and reconsider his decision, and that the certification of the case to the Regional Commissioner served to remedy any procedural defects which may have occurred at the district level. The Regional Commissioner further ruled that because the owner of the subject enterprise failed to satisfactorily establish that she was an Italian national, the applicant was ineligible for treaty investor status as her employee.

This case appears to be one of first impression. The controlling issue to be resolved is whether a United States citizen at birth who later acquired Italian nationality through marriage and the operation of Italian law, and who has invested in a United States enterprise, is eligible to confer treaty investor status upon an alien employee of such enterprise under the Immigration and Nationality Act, as amended. The resolution of this issue must begin with an analysis of the statute and pertinent regulations.

The requirements for qualifying for treaty investor status are clearly set forth in 22 C.F.R. 41.41. Among other things, the regulation provides that an alien may establish such status if "... he is employed by ... an organization which is principally owned by a person ... having the nationality of the treaty country...." While the evidence of record is not conclusive, I am satisfied that the investor here is an Italian national by operation of Italian law. This case does not, however, turn on the Italian nationality of the owner of the enterprise. Her dual Italian nationality does not, standing alone, make the applicant here eligible for the status of a treaty investor under 22 C.F.R. 41.41(a)(3).

A treaty investor is defined as:

... an *alien* entitled to enter the United States under and in pursuance of the provisions of a treaty of commerce and navigation between the United States and the foreign state of which he is a national ... solely to develop and direct the operations of an enterprise in which he has invested ... a substantial amount of captial;

Section 101(a)(15)(E) Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(E), as amended. (Emphasis added.) This statutory requirement of alienage is further articulated in 22 C.F.R. 41.3, which specifically prohibits the issuance of visas to nationals of the United States, which includes citizens. The record, however, contains clear and uncontroverted evidence that the employer here is not an alien, but rather a native-born United States citizen. Nor is there any evidence or assertion in the record that she has voluntarily relinquished or otherwise lost her United States citizenship. As such, she would not be entitled to enter the United States as an alien, as required by the statute, but rather as a United States citizen. As a United States citizen, she is therefore statutorily ineligible for treaty investor status.

Because she cannot qualify as a treaty investor, the applicant here cannot qualify as a treaty investor as her employee under 22 C.F.R. 41.41(a)(3).

The applicant argues that his prospective employer's dual Italian nationality qualifies him for treaty investor status, notwithstanding her United States citizenship. He attempts to expand this country's recognition of the principle of dual nationality to the point where he would compel the United States to at once treat the Italian citizenship of his employer with an equal degree of legal and political force as it does her United States citizenship. This position, however, is not supported by authority or logic. The cases the applicant cites on this point relate to the loss of United States citizenship and the tax liabilities of dual nationals—neither of which issue is relevant to this case. On the other hand, there is ample authority which holds the contrary position. For example, Hyde, in his treatise *International Law*, at p. 1131, states that:

> Two States may in fact lay claim to the same individual as a national at the same time. This circumstance does not, however, place the claimants on an equal footing. *The equities of one are of necessity superior to those of the other. They cannot at the same moment be on the same plane.* (Emphasis supplied.)

The legal and political predominance of the owner's United States citizenship here is clear. In fact, it is by her own affirmative actions to invoke her United States citizenship to establish and maintain her business enterprise in this country that the predominance of such citizenship is evident. In order to obtain Certificates of Registry from the United States Coast Guard necessary for her wholly-owned enterprise to ply United States coastal waters, the enterprise was required to be at least 75% owned by United States citizens. Additionally, continuing permission from the Coast Guard to ply United States waters under the Certificates of Registry will continue only as long as 75% of the enterprise is owned by United States citizens. Thus, the owner of the enterprise held herself out as a United States citizen when she sought and was granted Certificates of Registry issued under the jurisdiction of the United States Coast Guard. Moreover, she is continuing to hold herself out as a United States citizen in order to keep her Certificates of Registry in force. Clearly, then, the owner has elected to have the United States recognize her United States citizenship as predominant. Had she sought such recognition of her Italian citizenship, her enterprise would not have been issued the necessary Certificate of Registry by the United States Coast Guard and would not have been allowed to ply its trade in United States waters. In other words, the very existence of the business upon which the applicant seeks treaty investor status would not be possible unless its owner were a citizen of the United States.

The applicant nonetheless contends that the United States should give equal recognition to his employer's Italian citizenship in order that he may receive treaty investor status as her employee under 22 C.F.R. 41.41(3). To do so would allow a situation in which she would be able to secure benefits from one Government agency by claiming to be a United States citizen, and simultaneously secure other benefits from a second Government agency by claiming to be an Italian citizen. The owner's dual nationalities, however, are not interchangeable at will depending upon the relative Government benefits she may be granted or denied by claiming one or the other. As indicated above one of the two nationalities must predominate. Here the affirmative actions of the owner herself establish the predominance of her United States citizenship.

The only remaining issue to be disposed of is what effect, if any, the District Director's approval and subsequent denial of the application on September 29, 1978, has on the outcome of the case. The District Director has the authority under 8 C.F.R. 103.5 to reconsider his completed actions. There is no question that the manner by which the District Director rescinded the approval of the instant application was procedurally defective. The only consequence of such defect to the applicant, however, was that he did not receive a benefit for which he was statutorily ineligible. In any event, he was granted a subsequent opportunity by the District Director to submit countervailing evidence. This overcomes the earlier procedural defect in this case and renders it harmless error, and no ground for reversal of the District Director's decision.

ORDER: The District Director's decision of December 11, 1978, be affirmed, and the application for change of nonimmigrant classification is hereby denied.