MATTER OF OGNIBENE

Section 248 Proceedings

A-24702193

*Decided by Regional Commissioner April 4, 1983*

(1) In the case of a dual national alien nonimmigrant, the nationality claimed or established by him at the time of his entry into the United States must be regarded, for purposes of section 214 of the Immigration and Nationality Act, 8 U.S.C. 1184, as his sole or operative nationality for the duration of his temporary stay in the United States.

(2) Satisfactory claim to, or establishment of, alien nationality is one of the conditions under which a person is admitted to the United States pursuant to section 214(a) of the Act. Thus, applicant who applied for admission to the United States and was admitted as a citizen of Canada is strictly governed by the condition of Canadian nationality under which he was admitted.

(3) Section 101(a)(15)(E)(ii) of the Act, 8 U.S.C. 1101 (a)(15)(E)(ii), makes no provision for dual nationality in relation to administration and enforcement of treaties of commerce and navigation. *See Matter of Damioli*, 17 I&N Dec. 303 (Comm. 1980).

ON BEHALF OF APPLICANT: David F. Vedder, Esquire
Wells & Vader
P.O. Box 5385
Daytona Beach, Florida

The applicant is a 48-year-old native of Italy who alleges to be a dual national of Canada and Italy. He last entered the United States as a noncontrolled Canadian citizen on December 19, 1980. He now seeks treaty investor status based on his claimed Italian nationality and on a purported investment in real estate ventures in Florida.

Section 101(a)(15)(E)(ii) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(E)(ii), defines a treaty investor as—

an alien entitled to enter the United States under and in pursuance of the provisions of a treaty of commerce and navigation between the United States *and the foreign state of which he is a national* . . . solely to develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital[.] (Emphasis supplied.)

The District Director denied the application on the premise that because the applicant had not established he "can legally claim both Canadian and Italian nationalities at the same time, it must be assumed that he can claim only Canadian nationality." Nationals of Italy are

eligible for classification as treaty investors. Nationals of Canada are ineligible for that classification. Service Operations Instruction (O.I.) 214.2(e).

On appeal, counsel argues that the applicant may properly be deemed to hold both Canadian and Italian nationalities. Counsel has introduced inconclusive undertakings to this effect from two Canadian sources.

¨ It has not been conclusively established that the applicant does hold dual Canadian-Italian nationality. However, it is noted in this regard that the oath of allegiance prescribed for persons becoming naturalized as citizens of Canada does not contain an instrument of renunciation of prior allegiances. Accordingly, it will be conceded *arguendo*, to ensure due process, that the applicant is in fact a dual national of Canada and Italy.

Counsel urges the proposition that, in spite of his admission to the United States as a Canadian citizen, the applicant should now be permitted to assert his Italian nationality in pursuit of the benefit sought in the instant application. There are numerous examples of judicial recognition of the principle or fact of dual nationality and of the prerogative of dual nationals to alternately exercise the respective rights or privileges of such dual nationalities. However, such cases are concerned solely with questions of expatriation and election of nationality pursuant to the provisions of the nationality laws of the United States. *See, e.g., Perkins* v. *Elg*, 307 U.S. 325 (1939); *Tomasicchio* v. *Acheson*, 98 F.Supp. 166 (D.D.C. 1951); *Kawakita* v. *United States*, 343 U.S. 717 (1952), *reh. denied, 344 U.S. 850; Jalbuena* v. *Dulles*, 254 F.2d 379 (3d Cir. 1958). The instant application is set in the wholly distinct context of a dual national who, having been admitted to the United States as a citizen of a specific foreign state, now seeks to obtain a benefit unavailable to those of the nationality in which he was so admitted, but available to individuals sharing his second nationality.

However, the clear language of section 101(a)(15)(E)(ii) of the Act makes no provision for consideration of dual nationality in relation to administration and enforcement of treaties of commerce and navigation, nor do attendant regulations, policy, or case law.

> Dual nationality is universally recognized as an undesirable phenomenon. It inevitably results in questionable loyalties and leads to international conflicts. . . . Dual nationality also makes possible the use of citizenship as a badge of convenience rather than one of undivided loyalty. And it impairs the singleness of commitment which is the hallmark of citizenship and allegiance. A person should have a right to choose his own nationality, and this choice should be honored by all countries. However, *he should not be entitled to claim more than one nationality.*

> The undesirable features of dual nationality have often been noted. To some extent, treaties have sought to curtail this status, e.g. treaties between states agreeing that naturalization of their subjects will be recognized as terminating their original nationality. Moreover, under appropriate circumstances a dual national can be required to elect which nationality he desires to retain. (Footnotes omitted.) (Emphasis supplied.) ·

3 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 11.3d (rev. ed. 1983).

> Two states may in fact lay claim to the same individual as a national at the same time. This circumstance does not, however, place the claimants on an equal footing. *The equities of one are of necessity superior to those of the other. They cannot at the same moment be on the same plane.* (Emphasis supplied.)

Hyde, *International Law* at § 1131, *as quoted in Matter of Damioli,* 17 I&N Dec. 303, 306 (Comm. 1980).

Clearly, in any given proceeding of law or treaty which turns on the specific nationality of an individual, the conduct of a dual national may be examined to determine specific applications of such law or treaty. Thus, for example, "A person possessing two or more nationalities who habitually resides in one of the countries whose nationality he possesses, and who is in fact most closely connected with that country, shall be exempt from all military obligations in the other country or countries." Article I, *Military Obligations in Certain Cases of Double Nationality* (a protocol concluded at The Hague on April 12, 1930, to which the United States and Canada, *et al.,* are signatory). Thus, under appropriate circumstances in a given proceeding of law, the operative nationality of a dual national may be determined by his conduct without affording him the opportunity to elect which of his nationalities he will exercise.

The instant proceeding is deemed to constitute such a circumstance. The applicant is an alien, that is, he currently is physically present in a sovereign state of which he is neither a citizen nor a national. His presence in this country is governed by section 214 of the Immigration and Nationality Act, which provides that, "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe . . . ." Clearly, the presence of any person in a sovereign state as an alien nonimmigrant is based on such person having satisfactorily claimed or established alien nationality or citizenship at the time that such person applied for admission to and was admitted to such sovereign state. Satisfactory claim to, or establishment of, alien nationality is one of the conditions under which a person is admitted to the United States pursuant to section 214 of the Act.

The applicant applied for admission to the United States and was admitted to the United States as a citizen of Canada. His continued presence in the United States is strictly governed by the condition of Canadian nationality under which he was admitted. The applicant cannot be afforded the opportunity of "the use of citizenship as a badge of convenience" (Gordon and Rosenfield, *supra*) in this instance, for to do so would contravene section 214 of the Act by usurpation of the statutory discretionary authority of the Attorney General to establish the conditions under which an alien nonimmigrant may be admitted to the

United States. It is hereby found that, in the case of a dual national alien nonimmigrant, the nationality claimed or established by him at the time of his entry into the United States must be regarded, for the purposes of section 214 of the Act, as his sole or operative nationality for the duration of his temporary stay in the United States. "Nationality Considerations Pursuant to Section 101(a)(15)(E)(ii) of the Immigration and Nationality Act" (memorandum of law from the Service General Counsel, February 4, 1983). To permit a dual national alien nonimmigrant to freely switch or alternate nationalities, for whatever reason, subsequent to admission to the United States would cause unjustifiable confusion in proceedings under the Immigration and Nationality Act, which contemplates, in instances such as this one, possession by alien nonimmigrants of a single, specific nationality, to wit, that in which they were admitted to the United States.

Further, as stated by Gordon and Rosenfield, *supra*, as a general principle, dual nationals, in any given proceeding in which nationality is a factor, "should not be entitled to claim more than one nationality." Clearly, it is not the prerogative or position of the United States to require a dual national alien nonimmigrant to elect to retain one or another of his nationalities. Equally clearly, the national sovereignty of the United States is acceptably and reasonably exercised through section 214 of the Act in holding that a dual national alien nonimmigrant is, for the duration of his temporary stay in the United States, of the nationality which he claimed or established at the time that he entered the United States. Accordingly, it is concluded that the District Director properly determined that the applicant must be regarded as a citizen of Canada and that he is therefore ineligible for the benefit sought in that Canada is not signatory to a treaty of commerce and navigation with the United States.

The District Director did not address any factors beyond those concerned with the applicant's nationality. Review of the appellate record, however, does not compel a *prima facie* finding that the investment under consideration is substantial, as also required by section 101(a)(15)(E)(ii) of the Act.

The record contains no indication of the investment by the applicant of a substantial amount of capital owned or controlled by him. The record does contain documentary evidence of real estate transactions by the applicant, most of which involve assumption of mortgage debt or the incurring of new mortgage debt. The record contains copies of personal checks totaling $108,915 applied by the applicant to various real estate ventures. However, the record is silent as to whether this sum represents capital owned by the applicant or for which he is personally at risk or whether it represents unsecured mortgage debt incurred by the applicant. "Investments such as mortgage debt or commercial secured

loans to the enterprise (*e.g.*, loans secured by the enterprise assets) cannot count toward determining the amount of the actual investment." Vol. V, *Visa Services* No. 20, Bureau of Consular Affairs, U.S. Department of State (May 1982). A review of the applicant's statement of accounts indicates that the applicant's real estate transactions are based on exactly such mortgage debt or commercial secured loans. Accordingly, it is found that the applicant has failed to establish that he has in fact invested a substantial amount of capital in a commercial enterprise.

For the above-stated reasons, the decision of the District Director will be affirmed and the appeal will be dismissed.

**ORDER:** The appeal is dismissed.