**Tai Chiu WONG, Plaintiff,**

**v.**

**David N. ILCHERT, District Director of the United States Immigration and Naturalization Service, San Francisco, William Barr,[1] Attorney General of the United States, and Gene McNary, Commissioner, United States Immigration and Naturalization Service, Defendants.**

**No. C–91–0736 WHO.**

United States District Court, N.D. California.

Nov. 1, 1991.

Eugene Wong, Valencia & Wong Law Offices, San Francisco, Cal., for plaintiff.

William T. McGivern, U.S. Atty., Susan L. Kamlet, Asst. U.S. Atty., San Francisco, Cal., for defendants.

OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, Tai Chiu Wong ("Wong"), seeks injunctive and declaratory relief enjoining

1. Richard Thornburgh was succeeded by William Barr as Attorney General of the United States. Accordingly, the Court *sua sponte* changes the case caption to "William Barr, Attorney General of the United States."

defendants, David N. Ilchert, District Director of the United States Immigration and Naturalization Service, Dick Thornburgh, Attorney General of the United States, and Gene McNary, Commissioner, United States Immigration and Naturalization Service, from deporting him and compelling issuance of work authorization.[2] He claims that as a national of the People's Republic of China ("PRC") he is entitled to protection under Executive Order 12711 ("the EO")[3].

## I.

Wong entered the United States on a visitor visa on March 12, 1990, with a British passport stating he was a British Dependent Territories Citizen from Hong Kong.[4] He failed to depart at the end of the visa period. His illegal presence was discovered when he was subsequently arrested for reckless driving. He was then placed in deportation proceedings and ordered to voluntarily depart or be subject to deportation. Wong failed to leave, and in December 1990 applied for a passport (issued on January 7, 1991) from the PRC. His application for work authorization was

then rejected by the Immigration and Naturalization Service ("INS"). Wong filed this action on March 13, 1991, one day before he was required by the prior order to report for immediate deportation.

## II.

The parties' cross-motions for summary judgment essentially state mirrored propositions.[5] Defendants claim Wong is not eligible for coverage under the EO and must be deported. Wong states that he has established Chinese nationality and deserves a stay of deportation under the EO. The only issue of real dispute is whether Wong qualifies as a "national" of the PRC for the purposes of the EO.[6]

Wong alleges that the issue of his nationality is one of fact, defeating summary judgment for defendants, and attempts to present proof that the definition of a PRC national includes individuals like himself, rendering summary judgment in his favor appropriate. The Court does not find any material issue of fact in dispute. Defendants challenge no significant facts alleged by Wong. Rather, this case involves inter-

2. The Immigration and Naturalization Service granted temporary work authorization and a stay of deportation on March 13, 1991, when it learned that Wong had obtained a passport from the People's Republic of China.

3. Enacted in the wake of the Tianamen Square tragedy, the EO directs the Attorney General to defer deportation and approve work authorization for all PRC nationals who were in the United States during the period of June 5, 1989, through April 11, 1990. The INS Central Office later issued a memorandum, especially relevant to the case at bar, affirming an "administration policy" regarding the application of the EO to aliens entering the States on Hong Kong passports. Because Hong Kong is not under the sovereignty of the PRC, the INS directed that such individuals shall not be considered to be nationals of the PRC for the purpose of the EO, even if the PRC considers them citizens. Defs.' Exs. in Supp. of Defs.' Mot. for Summ. J., (hereinafter "Defs.' Exs.") filed Sept. 5, 1991, Ex. 15.

4. Wong was born in and is a native and a resident of Hong Kong. Defendants aver there is no evidence he was ever in mainland China. Wong states in his papers that he will present evidence that he worked in the PRC for some time. Even if Wong's proof is good, the disposition of these motions will not differ.

5. Wong goes to some pains in both his moving and opposition papers to establish the jurisdiction of this Court and the fact that he has exhausted his administrative remedies. Defendants aptly note that the only issue before this Court on these motions is the propriety of applying the EO to Wong, and do not dispute Wong's claim of jurisdiction. On examination *sua sponte*, the Court also finds jurisdiction proper. *See Legal Aid Soc'y of Alameda County v. Brennan*, 381 F.Supp. 125, 129–32 (N.D.Cal. 1974) (district court has jurisdiction over claims based on executive order under 28 U.S.C. §§ 1331, 1361 and 5 U.S.C. §§ 701–706), *aff'd* 608 F.2d 1319 (9th Cir.1979). "Administrative action is subject to judicial review unless it is clear that such review was not to be available." *Legal Aid Soc'y*, 608 F.2d at 1330. The Court finds no such showing in the pertinent statutes.

6. Wong's counsel argues, with references to the United States–PRC Consular Convention of 1980, that the law of the PRC should be adopted in order to determine the meaning of "national" for the purposes of the EO. Initially, the Court notes Wong's references are unavailing; additionally, the Court does not believe the interpretation of executive orders enacted by the United States are subject to standards of Chinese law.

pretation of the EO as a matter of law and, thus, summary judgment is appropriate.

The PRC clearly considers Wong to be a national, as evidenced by its issuance of his passport. Although no definition of "national" exists specifically for the EO in question, a general view of international relations is that countries defer to each other's definitions in determinations of nationality such as the one before the Court. The China–Hong Kong–Taiwan situation is somewhat of an exception, and this creates the issue at hand. Hong Kong is deemed for many purposes a part of China, although it is a British territory, and PRC nationals include Hong Kong citizens and residents. This supports Wong's position that he is protected by the EO.

Defendants do not actually dispute Wong's claim of PRC nationality. Rather, they claim an exception to treatment under the EO for individuals in Wong's position, that is, "nationals" of the PRC who were in the United States during the applicable period on passports issued by other countries, who do not objectively appear to be the type of PRC nationals the President intended to protect with the EO. Even read restrictively, defendants argue that Wong is not an intended beneficiary of the EO's security.

The INS letter of July 11, 1991, clarifying the "policy of the administration with respect to nationals of the [PRC]," submits a logical interpretation of the term "national" as used by the EO. Defs. Exs., Ex. 15. This letter is supported by an earlier letter dated June 11, 1991, from the Deputy Assistant Commissioner of Adjudications, stating that "aliens who are citizens of the United Kingdom Colony of Hong Kong shall not be considered to be PRC nationals for purposes of Executive Order 12711, even if the PRC Government regards such aliens as PRC citizens." Plf.'s Mot. for Summ. J. and Mem. of P. & A. in Supp. of the Mot., filed Sept. 5, 1991, Ex. A. These statements support defendants' position.

■ The standard of review accorded administrative actions helps tip the balance here, making summary judgment for defendants fitting. Courts are required to pay due deference to constructions of regulations by administrative agencies—" 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *see also Plyler v. Doe,* 457 U.S. 202, 225, 102 S.Ct. 2382, 2399, 72 L.Ed.2d 786 (1982) ("The obvious need for delicate policy judgments has counseled the Judicial Branch to avoid intrusion into th[e] field" of immigration and alien status); *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) ("limited scope of judicial inquiry into immigration legislation").

The INS letters put forth an interpretation of the EO that is not improperly restrictive and is reasonable under the circumstances. It does not seem plausible that the President intended to protect individuals who entered the country on Hong Kong passports and invoked their PRC "nationality" to avoid deportation on otherwise proper grounds. The Supreme Court's deference to agency enactment of statutory regulations is at least analogous, if not directly on point, to agency enactment of regulations regarding executive orders.[7]

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v.*

---

[7] It might even be argued that greater deference should be accorded here, where the agency and the enacting official are within the same branch. On the other hand, because only the executive branch is involved, the deference due legislative acts might not be required. Either way, "the power over aliens is of a political character and therefore subject only to narrow judicial review." *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 1904 n. 21, 48 L.Ed.2d 495 (1976). The agency decisions at hand deserve some degree of respect from the third branch and, thus, their interpretation merits strong consideration.

*Ruiz,* 415 U.S. 199, 231 [94 S.Ct. 1055, 1072, 39 L.Ed.2d 270] (1974)....

We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations....

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted). The INS has made its decision, and " '[i]f this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' " *Id.* at 845, 96 S.Ct. at 2783 (quoting *United States v. Shimer,* 367 U.S. 374, 382–83, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)).

The INS has been entrusted by Congress with the task of regulating aliens and immigration. The President appears to be acting in his role as the INS' superior, and Wong does not object to the enactment of the EO, only the INS' interpretation. Substituting "the President" for "Congress" in the preceding quote, the INS' choice is entirely reasonable and must be considered the law for the purposes of the EO. Summary judgment, therefore, is appropriate for defendants.

The equities of this case support this conclusion. It appears that Wong has invoked his PRC nationality for the sole purpose of deferring his deportation until the EO runs out in 1994, that he improperly overstayed his visa, and that he would be deportable without question but for the potential application of the EO. Probably most telling is the fact that Wong's arguments center on the *rights of the PRC* to protect its nationals and individuals it chooses to call nationals. In contrast, the motivation behind the EO was protection of PRC nationals *from the PRC government* in the wake of Tianamen Square. It seems singularly improper for Wong to be arguing the importance of heeding PRC prerogatives and predilections in interpreting an executive order specifically intended to accord temporary asylum from the PRC.[8]

Both sides present their arguments by citing international law[9], INS opinions, and the letters quoted above. While none of these references are controlling, the deference owed to the executive branch and the lack of disputed facts provides clear direction to the Court. Taking only the undisputed facts as true, Wong cannot be considered a PRC national for the purposes of protection under the umbrella of the EO. Accordingly,

IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is GRANTED.

2. Plaintiff's motion for summary judgment is DENIED.

3. The parties shall pay their own costs.

---

**8.** For the first time at oral argument counsel claims that Wong is in greater fear of persecution from the totalitarian government of the PRC than most PRC nationals. Even if the Court found this to be true, Wong's arguments center on his allegiance to PRC law, and are based on his personal decision to obtain a PRC passport. The Court notes this is a strange position for an individual to take regarding a government from which he is in great fear of persecution.

**9.** Regardless of the weight accorded this doctrine, both logic and international law support defendants' position here. The Hague Convention, in dealing with similar problems, states that where dual nationality problems exist, a "third State shall ... recognize exclusively in its territory either the nationality of the country in which [the alien] is habitually and principally resident, or the nationality of the country with which in the circumstances he appears to be in fact most closely connected." Convention on Certain Questions relating to the Conflict of Nationality Laws, Apr. 12, 1930, 179 L.N.T.S. 89, 101. Under either definition, defendants properly considered Wong a national of Hong Kong.