**Tai Chiu WONG, Plaintiff–Appellant,**

v.

**David N. ILCHERT, District Director of INS, et al., Defendants–Appellees.**

**No. 91–16808.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1993.

Decided June 29, 1993.

Eugene C. Wong, Robert G. Ryan, San Francisco, CA, for plaintiff-appellant.

Michele Y.F. Sarko, Dept. of Justice, Washington, DC, for defendants-appellees.

Before CANBY, and BRUNETTI, Circuit Judges, and JONES,* District Judge.

CANBY, Circuit Judge:

Tai Chiu Wong, a native and resident of Hong Kong, appeals from the district court's summary judgment entered against him in his action to enjoin the District Director of the United States Immigration and Naturalization Service (INS), the Attorney General of the United States, and the Commissioner of the INS from deporting him. *See Wong v. Ilchert,* 785 F.Supp. 822, 825 (N.D.Cal.1991). Wong contends that he is a national of the People's Republic of China (PRC), and therefore entitled to relief under Executive Order 12711. That order was issued in response to the events at Tiananmen Square in 1989. It directs the Attorney General to defer deportation and to approve work authorization for all PRC nationals who were in the United States between June 5, 1989, and April 11, 1990.[1] We agree with the district court that this order does not apply to Wong, and we accordingly affirm.

## BACKGROUND

Wong arrived in the United States on a visitor visa in March, 1990. He carried a British passport that declared him to be a British Dependent Territories Citizen from Hong Kong. Wong remained in the United States illegally after his visa had expired.

Wong was arrested for reckless driving, and from that arrest the INS discovered his illegal status. The INS began deportation proceedings against Wong. An immigration judge ordered his deportation, but permitted Wong voluntary departure. Wong did not seek asylum and waived his right to appeal the immigration judge's decision to the Board of Immigration Appeals.

Wong remained in the United States. He obtained a PRC passport. He applied to the INS for a work authorization, but failed to reveal that a final deportation order had been entered against him. The INS rejected his application.

Following expiration of the voluntary departure period, the INS obtained a warrant for Wong's deportation. Wong filed this attack on the deportation order one day before he was to have surrendered to INS officials. He does not challenge the merits of the deportation order, but argues solely that the executive order bars his deportation at this time. He did not make that argument before the immigration judge.

The district court granted a temporary order restraining the INS from deporting Wong or denying him work authorization. The court granted a stay and a continuance in the matter to permit the INS to make its determination whether the executive order applied to Wong. The INS determined that Hong Kong residents were not PRC nationals within the meaning of the executive order. *Wong,* 785 F.Supp. at 824. Upon cross-motions for summary judgment, the district court agreed with that determination and denied relief to Wong. He appealed.[2]

## DISCUSSION

*Jurisdiction and Justiciability*

We ordered supplemental briefing upon the questions whether we had jurisdiction to consider Wong's appeal, and whether we should refrain from deciding the appeal on the basis of the political question doctrine, or some other prudential consideration. The difficulty of resolving those questions is far greater than the difficulty of resolving whether the executive order applies to Wong. We therefore assume without deciding the existence of subject matter jurisdiction over

---

* The Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation.

1. The executive order provides in relevant part:
   Section 1. The Attorney General is directed to take any steps necessary to defer until January 1, 1994, the enforced departure of all nationals of the Peoples' Republic of China (PRC) and their dependents who were in the United States on or after June 5, 1989, up to and including the date of this order [April 11, 1990].
   Exec. Order No. 12,711, 55 Fed.Reg. 13,897 (1990), *reprinted in* 8 U.S.C.A. § 1101 note at 31 (West Supp.1993).

2. The INS stayed Wong's deportation and granted him temporary work authorization pending the outcome of this appeal.

Wong's action, *Clow v. United States Dep't of Housing & Urban Dev.*, 948 F.2d 614, 616 & n. 2 (9th Cir.1991), and the justiciability of the merits of that action. *See New York v. United States,* —— U.S. ——, ——, 112 S.Ct. 2408, 2433, 120 L.Ed.2d 120 (1992) (assuming without deciding the inapplicability of the political question doctrine).

*Merits*

As a matter of common sense alone, Wong's argument is destined to fail. He entered this country as a Hong Kong citizen and resident, and the INS seeks to deport him to Hong Kong, which is still a colony of the United Kingdom. A humanitarian policy intended to suspend deportations of citizens of the PRC back to that country would seem to have little to do with Wong. His tenuous connection with the PRC arose at the eleventh hour upon his own initiative.

Wong maintains, however, that he falls within the terms of the executive order, and is entitled to its benefits. He maintains that the INS misinterprets the scope of the term "PRC national" contained in the executive order when the INS excludes Hong Kong residents. He relies primarily upon the PRC's steadfast position that Hong Kong is part of the PRC, a position evident in that country's issuance of a PRC passport to Wong. He insists that Sino–American agreements and principles of international law bind the United States to the PRC view. Under any standard of review,[3] Wong's argument fails.

None of the agreements or principles that Wong invokes requires the United States to consider Hong Kong part of the PRC. Contrary to Wong's assertion, the 1980 Sino–American consular agreement contained no American acceptance of Chinese law. The agreement defines "law" differently for each country. *See* Consular Convention, Sept. 17, 1980, U.S.–P.R.C., art. 2(12), 33 U.S.T. 2973, 2977. The two nations' mutual commitment to respect one another's territorial integrity, contained in two joint communiques, does not necessarily entail acceptance of one another's territorial claims.[4] The United States does not recognize Hong Kong as being under dual sovereignty. Nor does it aid Wong if he is regarded as a dual national; he has offered nothing to contradict the power of the INS to treat Wong as a national of Hong Kong because he entered this country upon its passport, *see In re Ognibene,* 18 I & N Dec. 425, 428 (Reg.Comm'ner 1983), or because he is more closely associated with Hong Kong than with the People's Republic of China. *Cf.* Convention on Certain Questions Relating to the Conflict of Nationality Laws, *opened for signature* Apr. 12, 1930, art. 5, 179 L.N.T.S. 89, 101. In addition, the INS interpretation of the executive order does not violate the United Nations Universal Declaration of Human Rights, for at no time has the INS said that Wong is without a nationality nor has it arbitrarily denied his right to change his nationality. *See Universal Declaration of Human Rights,* art. 15, G.A. Res. 217A(III), 3 U.N. GAOR (Resolutions, pt. 1), at 71, U.N. Doc. A/810 (1948).

The INS interpretation of the executive order is also consistent with existing American law. This court in related contexts has described Hong Kong as an entity separate from the PRC. *See, e.g., Oen Yin–Choy v. Robinson,* 858 F.2d 1400, 1403 (9th Cir.1988) ("[a]ll of Hong Kong will revert to the [PRC] on July 1, 1997"), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989); *Yee*

---

**3.** Although we review de novo the BIA's interpretation of immigration statutes in adjudications, *Alonzo v. INS,* 915 F.2d 546, 548 (9th Cir.1990), the defendants assert that the INS interpretation of the term "PRC national" is entitled to deference. The district court analogized INS enactment of regulations interpreting an executive order to agency enactment of regulations interpreting a statute, citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The court also noted that " 'the power over aliens is of a political character and therefore subject only to narrow judicial review.' "

*Wong,* 785 F.Supp. at 824 n. 7 (*quoting Hampton v. Mow Sun Wong,* 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 1904 n. 21 (1976)). We need not decide which standard is applicable.

**4.** For example, the 1972 Shanghai Communique, issued before the United States had established relations with the PRC, recognized the concurrent claims of the PRC and Taiwan to each other's territory. *See* Michael E. Mangelson, *Taiwan Re–Recognized: A Model for Taiwan's Future Global Status,* 1992 B.Y.U.L.Rev. 231, 234–35 & n. 15.

*Chien Woo v. Rosenberg,* 445 F.2d 277, 278 (9th Cir.1971) (involving "seventh preference" treatment for refugees). Prior to 1990, immigrant visa applicants from Hong Kong apparently were charged under the Immigration and Nationality Act to the quota of the United Kingdom. *See* 22 C.F.R. § 42.12 (1989); 2 Charles Gordon and Stanley Mailman, *Immigration Law and Procedure,* § 31.02[4][a] (Matthew Bender rev. ed. 1993).[5]

Section 103 of the Immigration Act of 1990 altered the charging procedure, but that alteration is of no help to Wong. That provision directs that as of fiscal year 1991, Hong Kong is "a separate foreign state, and not ... a colony or other component or dependent area of another foreign state" for the purpose of computing immigration quotas. *See* 8 U.S.C.A. § 1152 note at 102 (West Supp.1993). The United States' treatment of Hong Kong as an entity separate from the United Kingdom, however, does not lead to a conclusion that Hong Kong is part of the PRC. In fact, House and Senate conferees have indicated their intent to continue treating Hong Kong as a separate state for immigration quota purposes after its reversion to the PRC in 1997. H.R.Conf.Rep. No. 955, 101st Cong., 2d Sess. 123 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6788.

## CONCLUSION

Wong is neither an intended nor an actual beneficiary of Executive Order 12711.

AFFIRMED.

---

**5.** The State Department began listing Hong Kong as a foreign, i.e. independent, state in the current *Foreign Affairs Manual. See* 9 Gordon & Mailman, § 42.12, Exhibit 1.