**Chee Kin JANG, Plaintiff–Appellant,**

**v.**

**Janet RENO, Attorney General of the United States; Thomas J. Schiltgen, District Director of the Immigration & Naturalization Service; Joseph L. Thomas, Director, Western Service Center of the Immigration & Naturalization Service; Doris Meissner, Commissioner, Immigration & Naturalization Service; Immigration and Naturalization Service; Anthony C. Moscato, Director, Executive Office for Immigration Review; Executive Office of Immigration Review; United States Department of Justice; Madeleine Albright,\* Secretary of State of the United States; U.S. Department of State, Defendants–Appellees.**

**No. 96–15593.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1997.

Decided May 14, 1997.

State. Fed.R.App.P. 43(c)(1).

Eugene C. Wong and Robert G. Ryan, Law Offices of Valencia & Wong, San Francisco, California, for plaintiff-appellant.

Ethan B. Kanter, United States Department of Justice, Washington, D.C., for defendants-appellees.

Before: WIGGINS and TROTT, Circuit Judges, and ZAPATA,* District Judge.

## OPINION

WIGGINS, Circuit Judge:

Plaintiff Chee Kin Jang is a dual national—a native and citizen of the People's Republic of China ("PRC" or "China") and a citizen of Belize. On January 22, 1988, he entered the United States from Belize under a C–1 visa.[1] At the time of entry, he claimed citizenship of Belize and entered under a Belize passport. While in the United States, he unsuccessfully applied for adjustment of status to lawful permanent resident under the Chinese Student Protection Act of 1992 ("CSPA"), Pub.L. No. 102–404, 106 Stat.1969, *reprinted in* 8 U.S.C.A. § 1255 note (West Supp.1997). On this appeal, plaintiff challenges a district court order granting summary judgment in favor of Janet Reno, the Immigration and Naturalization Service, et al. (collectively, "INS"). The district court held that plaintiff does not qualify under the CSPA because his declared nationality upon entry into the United States was that of Belize, so he was not a "PRC national" for purposes of the CSPA. We have jurisdiction under 28 U.S.C. § 1291.[2] We AFFIRM.

Following the events in Tiananmen Square in 1989, President Bush issued Executive Order No. 12711 ("EO 12711"). 55 Fed.Reg. 13,897 (1990), *reprinted in* 11 U.S.C.A. § 1101 note (West Supp.1997). This order allowed PRC nationals who were in the United States on or after June 5, 1989 to avoid enforced departure until January 1, 1994. Congress passed the CSPA to resolve the immigration status of those that were covered by EO 12711 before its expiration. On April 11, 1994, the INS rejected plaintiff's application for adjustment of status to permanent resident under the CSPA, noting

that he was a dual national who had entered the United States claiming citizenship of Belize, not China.[3] The INS concluded that as a result of its dual nationality policy, plaintiff was not a PRC national under the CSPA. For the duration of an alien's stay, the dual nationality policy treats a national of two foreign states as a national of the state he or she claimed upon entry into the United States. Unable to obtain declaratory and injunctive relief against this policy in district court, plaintiff filed this appeal.

 Initially, we reject the INS's argument that its decision is not reviewable under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. The INS contends that, as the Attorney General's lawful delegate, it has unfettered discretion under 8 U.S.C. § 1184(a) to dictate the conditions of entry of nonimmigrant aliens. In this case, we do have law to apply in reviewing the INS's decision. We look to the language of the CSPA; specifically, whether the term "all PRC nationals" as used in that statute includes by its plain meaning even those dual PRC nationals who entered under another passport and thus are not treated as PRC nationals under the dual nationality policy. Accordingly, judicial review is proper.

 We review a grant of summary judgment *de novo*. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209. Our *de novo* review of the INS's statutory construction of the CSPA is subject to the two-step *Chevron* analysis. *See Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir.1995). Thus, if the statutory language admits only one interpretation, that interpretation must be given effect. *Tang v. Reno*, 77 F.3d 1194, 1197 (9th Cir.1996). If the language is silent or ambiguous, and if Congress has not expressed any intent on the precise question, then we proceed to step

---

* Hon. Frank R. Zapata, United States District Judge for the District of Arizona, sitting by designation.

1. A C–1 visa is for transit through the United States. 8 U.S.C. § 1101(a)(15)(C); 22 C.F.R. § 41.12 (1996).

2. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") does not apply to this case because judicial review

was underway before the Act's effective date of April 1, 1997. *See* IIRIRA § 309(c)(1), Pub.L. No. 104–208, 110 Stat. 3009 (1996), *reprinted in* 8 U.S.C.A. § 1101 note (West, WESTLAW 1997).

3. Plaintiff does not contend that the INS is estopped from this determination by its earlier action allowing him to stay under EO 12711.

two: defer to the INS unless its interpretation is arbitrary or capricious. *Chevron USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43 & n. 9, 104 S.Ct. 2778, 2781–82 & n. 9, 81 L.Ed.2d 694 (1984); *Tang,* 77 F.3d at 1197. Our review is especially deferential in the context of immigration policy. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977).

■ The CSPA grants eligible applicants significant advantages in qualifying for an adjustment of immigration status under 8 U.S.C. § 1255(a). *See* CPSA § 2(a). The CSPA covers "national[s] of the People's Republic of China described in section 1 of Executive Order No. 12711...." CSPA § 2(b)(1). Section 1 of EO 12711 covered "all nationals of the People's Republic of China (PRC) ... who were in the United States on or after June 5, 1989, up to and including the date of this order [April 11, 1990]." Additionally, the CSPA has physical presence requirements not at issue in this case. CSPA § 2(b)(1). The sole issue before us is whether plaintiff is a PRC national within the meaning of the CSPA despite declaring a different nationality when he entered the United States.

Plaintiff argues that we should reverse under step one of *Chevron* because the INS's application of the dual nationality policy to the CSPA was contrary to the plain language of the CSPA. The CSPA covers "all PRC nationals," with specific enumerated exceptions. Congress did not expressly exclude dual nationals from the CSPA, unlike such categories as drug traffickers and terrorists. *See* CSPA §§ 2(a)(3)(A) & (B) (detailing which categories for general exclusion of aliens apply and which are waived under the CSPA). Plaintiff contends that because he does not fall within any enumerated exception in the CSPA, he must be a "PRC national" under its plain language.

We agree with the district court that Congress did not consider the issue of dual nationals when it passed the CSPA. Every category of exclusion in CSPA § 2 corresponds with, and refers to by section number, categories of general exclusion in Immigration and Nationality Act ("INA") § 212, 8 U.S.C § 1182. The CPSA waived application of some of the general exclusion categories to otherwise qualifying PRC nationals, but retained others. Because dual nationality is not a generally excludable category under 8 U.S.C. § 1182, Congress's failure to mention it in CSPA § 2 is not indicative of any intent one way or the other. CSPA § 2 does not address the issue of who is a "PRC national" within the meaning of the CSPA; rather it focuses on whether PRC nationals are excludable for other reasons.

Concluding that the statutory language evidenced no specific congressional intent on the precise issue in dispute, we move on to step two of the *Chevron* analysis. Under 8 U.S.C. § 1184(a)(1), the INS may proscribe conditions for admission of nonimmigrant aliens "to insure that at the expiration of such time or upon failure to maintain the status under which he was admitted, or to maintain any status subsequently acquired under section 1258 of this title, such alien will depart from the United States." The district court held that the practice of binding an alien to his claimed nationality "promotes the congressional policy of insuring that an alien will be able to return, voluntarily or otherwise, to his or her country of origin if requested to do so and provides for consistency in the enforcement of law, especially given the large numbers of nonimmigrant foreign nationals who visit the United States each year."

While the Supreme Court has stated dual nationality is "a status long recognized in the law," *Kawakita v. United States,* 343 U.S. 717, 723, 72 S.Ct. 950, 955–56, 96 L.Ed. 1249 (1952), the dual nationality policy is not inconsistent with that recognition. As explained in *Matter of Ognibene,*

> Clearly, it is not the prerogative or position of the United States to require a dual national alien nonimmigrant to elect to retain one or another of his nationalities. Equally clearly, the national sovereignty of the United States is acceptably and reasonably exercised through section 214 of the [INA] in holding that a dual national alien nonimmigrant is, for the duration of his temporary stay in the United States, of the nationality which he claimed or estab-

lished at the time that he entered the United States.

*Matter of Ognibene,* 18 I. & N. Dec. 425, 428.

In *Wong v. Ilchert,* 998 F.2d 661, 663 (9th Cir.1993), we recognized, at least in dicta, the INS policy of treating dual nationals as a national of the country under whose passport he entered the United States. In *Wong,* a citizen of Hong Kong sought to avoid deportation by relying on the CSPA, claiming he was a dual national of China and Britain (as a native of the British Dependant Territory of Hong Kong). We held that citizens of Hong Kong were not PRC nationals under American law, notwithstanding China's willingness to give him a passport. *Id.* We went on to say, however, that "[n]or does it aid Wong if he is regarded as a dual national; he has offered nothing to contradict the power of the INS to treat Wong as a national of Hong Kong because he entered this country upon its passport." *Id.* (citing *Ognibene* ). We adopt that reasoning in this case.

The INS may reasonably interpret the CSPA consistently with the dual nationality policy. Accordingly, the INS reasonably interpreted the term "PRC national" to exclude Chinese dual nationals who did not declare citizenship of the PRC when they entered the United States. *See Adjustment of Status; Certain Nationals of the People's Republic of China,* 58 Fed.Reg. 35,832, 35,833 (1993) (interpreting regulation implementing the CSPA that was codified at 8 C.F.R. Part 245).[4] Thus, dual nationals such as plaintiff are not covered if they only declared citizenship of a different (non-Chinese) country when they entered the United States.

We reject plaintiff's reliance on *Matter of Masson,* 12 I. & N. Dec. 699. *Masson* is inapplicable because the statutory language in that case did not use a term that was limited by an independent INS policy. The issue in that case was whether the petitioner was a "native" of Cuba and thus qualified for relief available to all "natives or citizens" of Cuba. In contrast, the CSPA provides relief for PRC "nationals." The difference for the interpretation of "native" and "national" is significant; the plain meaning of "native" is unambiguous, while the meaning of "national" must be understood in light of the INS's requirement that an alien must establish the nationality under which he enters the United States. *See* 8 C.F.R. §§ 212.1, 214.1(a)(3) (1996) (requiring admissibility be established at time of entry by production of a valid passport and, for most nationalities, a valid visa).

■ We also reject plaintiff's argument that the dual nationality policy is inconsistent with the CSPA because the CSPA waives the need for travel documents (including passports) in determining eligibility for CSPA adjustment. While the CSPA does provide relief for PRC nationals who do not have a valid visa, passport, or other entry document, CSPA § 2(a)(3) (waiving requirements of 8 U.S.C. § 1182(a)(5) & (7)), a lack of those documents is not the reason the INS rejected plaintiff's application. The CSPA does not relieve the alien from establishing in some way that he is a PRC national for purposes of the CSPA; plaintiff cannot rely on the CSPA to undo his choice to enter the United States as a national of Belize.

■ Further, we reject plaintiff's argument that the INS unreasonably treats PRC dual nationals differently based on whether they entered under a PRC passport or under a passport of another country. The treatment may be different, but the difference is reasonable given the INS's need to ensure that the aliens comply with the conditions of their stay as authorized at the time of entry. Moreover, application of the dual nationality policy does not undermine the purpose of the CSPA. As a result of the exclusion proceedings against him, plaintiff faces a forced return not to China, but to Belize. 8 U.S.C. § 1227(a); 8 C.F.R. § 237.6(b).

We conclude that the district court did not err in granting summary judgment to the

---

4. In relevant part, it states that

[A]n alien is bound by the nationality claimed or established at the time of entry for the duration of his or her stay in the United States. Thus, a dual national CSPA principal applicant must have claimed PRC nationality at the time of his or her last entry into the United States on or before April 11, 1990.

*Id.* at 35,833.

INS because the INS had reasonably interpreted the CSPA in light of the dual nationality policy to find that plaintiff was not a "PRC national" within the meaning of the CSPA. Accordingly, we also deny plaintiff's request for attorney's fees and costs under 28 U.S.C. § 2412.

AFFIRMED.