**Benjamin LEPE–GUITRON, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 92–70505.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 10, 1993 *.

Decided Feb. 15, 1994.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Eric Beaudikofer, El Centro, California, for the petitioner.

Thomas W. Hussey, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before FLETCHER, PREGERSON, and RYMER, Circuit Judges.

FLETCHER, Circuit Judge:

Petitioner, a deportable alien, appeals a decision of the Board of Immigration Appeals ("BIA"), finding him statutorily ineligible for the discretionary waiver of deportation provided for in 8 U.S.C. § 1182(c) ("section 212(c)"). The BIA held that the time during which petitioner lived as a minor child with his permanent resident parents in the United States, prior to himself independently attaining permanent residency, did not count toward the seven years of "lawful unrelinquished domicile" required to make him eligible for discretionary relief under section 212(c).

We have jurisdiction to review orders of deportation pursuant to 8 U.S.C. § 1105a(a). This case requires us to decide whether, under section 212(c), a parent's lawful unrelinquished domicile is imputed to his or her minor children. We hold that it is.

## FACTS

Benjamin Lepe–Guitron is a native and citizen of Mexico. He states that his parents immigrated to the United States on September 16, 1976, and successfully applied to immigrate Lepe–Guitron, his sister, and one of his brothers. He further states that his parents and sister attained permanent resident status within two years thereafter, but that due to a processing error attributable to the Immigration and Naturalization Service ("INS") he did not attain that status until

October 3, 1986. He has five other, younger siblings, all of whom are United States citizens. He claims to have lived, attended school, and worked in the United States since his arrival in 1976.[1]

On September 1, 1989, Lepe–Guitron pled guilty and was convicted in California Superior Court of possession of marijuana for sale, and was sentenced to 120 days in county jail. On December 5, 1989, the INS instituted deportation proceedings pursuant to 8 U.S.C. § 1251(a)(11) (1988).[2] On June 13, 1990, an Immigration Judge ("IJ") found Lepe–Guitron deportable, and held that he was ineligible for section 212(c) relief because he had not been a permanent resident—and thus had not had an unrelinquished lawful domicile—for the requisite seven years. The IJ ordered him deported to Mexico.

Lepe–Guitron appealed to the BIA, arguing that because he was a child at the time, his seven-year period of "lawful unrelinquished domicile" should begin on the date his *parents* attained permanent resident status (in 1976), rather than on the date he himself independently attained such status. On July 2, 1992, the BIA rejected this argument, holding that Lepe–Guitron's "lawful unrelinquished domicile" must be counted from the date he himself first attained permanent resident status.

## DISCUSSION

### I.

■ Enacted in 1952 as part of a wide-ranging revision of the Immigration and Nationality Act ("INA"), section 212(c) provides:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) to (25), (30), and (31) of this section.[3]

8 U.S.C. § 1182(c). Although this section applies by its terms only to exclusion proceedings under subsection (a) of § 1182, judicial decisions have extended its reach to deportation proceedings. *Butros v. INS*, 990 F.2d 1142, 1143 (9th Cir.1993); *Tapia–Acuna v. INS*, 640 F.2d 223, 224 (9th Cir.1981).[4] Thus, deportable aliens who are permanent residents and who have accrued seven years of "lawful unrelinquished domicile" in the United States are eligible for a discretionary waiver of deportation. The provision was enacted to alleviate the harsh effects of deportation on those aliens who have lawfully established substantial ties to the United States. *Matter of Anwo*, 16 I & N Dec. 293 (BIA 1977).

We interpreted the phrase "lawful unrelinquished domicile" in *Castillo–Felix v. INS*, 601 F.2d 459 (9th Cir.1979). There, petitioner entered the country illegally in 1963, was deported in 1969, re-entered illegally, married a permanent resident in 1970, and was granted permanent resident status in 1972. In 1975 he was convicted of knowingly inducing the illegal entry of two aliens into the United States, and the INS began deportation proceedings against him. He conceded deportability, but asked for section 212(c) relief. The IJ and the BIA both found that he was ineligible for relief because his period of lawful domicile did not begin until 1972, when he attained permanent resident status. He appealed to this court, arguing that the

---

1. These claims were made as an offer of proof before the immigration judge. The record contains insufficient evidence to evaluate them. Therefore, in this appeal we consider—as did the BIA—whether Lepe–Guitron would be eligible for a discretionary waiver of deportation if his factual allegations are true.

   We note that Lepe–Guitron has put into the record 12 declarations from employers, friends, and a school principal. Also in the record is his diploma from a California middle school, dated June 14, 1985.

2. Under Section 1251(a)(11) conviction of a variety of drug-related offenses, including possession of marijuana is grounds for deportation.

3. The cited paragraphs constitute the various grounds for the exclusion of aliens seeking entry into the United States.

4. This conclusion was first reached in the Second Circuit. *See Francis v. INS*, 532 F.2d 268 (2nd Cir.1976) (equal protection clause of United States Constitution requires that section 212(c) relief be available even where alien has not "temporarily proceeded abroad").

"permanent residence" and "lawful unrelinquished domicile" portions of section 212(c) were distinct elements, and that therefore

> aliens who have lived here lawfully for seven or more consecutive years can obtain § 1182(c) relief, *regardless of when they were admitted for permanent residence.*

601 F.2d at 463 (emphasis added).

The *Castillo–Felix* court rejected petitioner's argument, holding,

> to be eligible for § 1182(c) relief, aliens must accumulate seven years of lawful unrelinquished domicile *after their admission for permanent residence.*

*Id.* at 467 (emphasis added).

The court's opinion was an exercise in deference to the INS's interpretation of its own statute, the INA. The court first noted that section 212(c) was ambiguous as to whether an alien could establish "lawful domicile" without having "permanent resident" status, and that the legislative history was not helpful in clarifying the matter. *Id.* at 464–65.[5] The court noted that since 1953 the BIA had consistently interpreted section 212(c) to require seven years of permanent residence, *see Matter of S.,* 5 I & N Dec. 116 (BIA 1953),[6] and held that this interpretation should only be set aside in the face of a "clear showing of a contrary intent by Congress." *Id.* at 465 (quoting *Baur v. Mathews,* 578 F.2d 228, 233 (9th Cir.1978)). Finding the BIA's interpretation not clearly contrary to Congress' intent in enacting the Immigration and Nationality Act, the court affirmed. *Id.* at 466–67.

## II.

■ Lepe–Guitron admits he was not granted permanent residence in his own name until 1986 (only three years before his deportation hearing), but claims that his par-

ents' permanent residence prior to that date should be imputed to him, as he was a minor at the time. The BIA rejected this claim, instead interpreting section 212(c) to require children to themselves accrue seven years of permanent residence after being formally accorded that status. We review the BIA's interpretation of section 212(c) de novo. *Abedini v. INS,* 971 F.2d 188, 190 (9th Cir. 1992); *see also Wong v. Ilchert,* 998 F.2d 661, 663 n. 3 (9th Cir.1993); *Butros,* 990 F.2d at 1144.

*Castillo–Felix* presented facts substantially different from Lepe–Guitron's situation. Castillo–Felix entered the country illegally, married, and only subsequent to his marriage did he acquire permanent resident status. *Castillo–Felix,* 601 F.2d at 461. Here, on the other hand, Lepe–Guitron, a child, legally entered the United States with his parents, was always legally within the country, was domiciled here, but acquired permanent resident status, still as a minor, many years after his parents achieved it.

■ The BIA was mistaken in automatically applying the rule in *Castillo–Felix*— that lawful domicile accrues from the date an alien *him- or herself* acquires permanent residency—to Lepe–Guitron without considering the crucial differences between the two cases. There are a number of persuasive reasons to hold that a child's "lawful unrelinquished domicile" under section 212(c) is that of his or her parents.

The position espoused by the government would subvert the fundamental policies animating section 212(c). What could be more frustrating to the section's "just and humane" goal of providing relief to those for whom deportation "would result in peculiar or unusual hardship," S.Rep. No. 355, 63d Cong., 2d Sess. 6 (1914),[7] than a deportation

---

**5.** *See* Comment, "Lawful Domicile Under Section 212(c) of the Immigration and Nationality Act," 47 *U.Chi.L.Rev.* 771, 781 (1980) ("the specific legislative history of section 212(c), though containing shreds of support for both interpretations, is essentially inconclusive").

**6.** *But see* Comment, 47 *U.Chi.L.Rev.* at 788–89 (arguing that BIA in *Matter of S.* meant only to deny section 212(c) relief to those who had not lawfully *entered* the United States, and that it

mistakenly equated "lawful admission" with "lawful admission for permanent residence;" suggesting that holding based on latter phrase is dictum) (quoting *Matter of S.,* 5 I & N Dec. at 118–19).

**7.** Section 212(c) is a revision of an earlier provision, the so-called "seventh proviso," which provided for a discretionary waiver of deportation, by the Secretary of Labor, for aliens returning to an "unrelinquished United States domicile of

that severed the bonds between parents and their children who had resided legally in the United States for the better part of their lives? Section 212(c) was enacted to provide relief from deportation for those who have lawfully formed strong ties to the United States. *See* S.Rep. No. 1515, 81st Cong., 2d Sess. 383 (1950). Because children naturally form the strongest of ties to the place where their parents are domiciled and they with them, section 212(c)'s core policy concerns would be directly frustrated by the government's proposal to ignore the parent's domicile in determining that of the child.

This conclusion is strengthened by a closer examination of Congress' chosen statutory term, "domicile." [8] In interpreting "domicile" as it appears in section 212(c), we have previously noted that the INA nowhere defines the term, but "incorporates the concept 'familiar in other areas of law.'" *Castillo–Felix*, 601 F.2d at 464 n. 11 (quoting 2 Gordon & Rosenfield, *Immigration Law and Procedure*, § 7.4b at 7–32 (1979)). We adopted a definition of domicile consonant with its common law meaning: that "aliens must not only be physically present here, but must intend to remain." *Id.* at 464; *accord Melian v. INS*, 987 F.2d 1521, 1524 (11th Cir.1993) ("'lawful domicile' under section 212(c) means at least the simultaneous existence of lawful physical presence in the United States and lawful intent to remain in the United States indefinitely"); *Anwo v. INS*, 607 F.2d 435, 437 (D.C.Cir.1979) (per curiam).

Under this definition we are impelled to the conclusion—unremarkable at common law—that a child's domicile follows that of his or her parents. *See Restatement (Second) Conflict of Laws* § 14(2) (1969); 25 *Am.Jur. 2d*, Domicil § 69 (1966). This is because children are, legally speaking, incapable of forming the necessary intent to remain indefinitely in a particular place. *Mississippi Band of Choctaw Indians v. Holyfield*, 490

U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989) ("Since most minors are incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents"). The force of this rule is highlighted by the corollary that "'[o]n occasion, a child's domicil of origin will be in a place where the child has never been.'" *Id.* (quoting *Restatement (Second) Conflict of Laws* § 14, Comment b).

Thus, while we have held it reasonable for the INS to interpret an *adult's* "lawful unrelinquished domicile" to begin on the day he or she acquires permanent residence, *Castillo–Felix*, 601 F.2d at 467, both the common law definition of domicile and the policies of section 212(c) preclude this interpretation when applied to children.

Other sections of the INA giving a high priority to the relation between permanent resident parents and their children lend strength to our analysis. Sections 1152 and 1153, which allocate the annual quota of immigrant visas, provide a preference for the alien children of United States residents and citizens. 8 U.S.C. §§ 1152(a)(4), 1153(a)(1) & (2). In considering applications for permanent resident status, a child residing outside the United States is given the same priority date and preference category as that of his or her parents. 8 C.F.R. 245.1(d)(vi)(B)(1). The Act even provides a waiver of excludability for certain immigrants who have helped their alien children enter the United States illegally. 8 U.S.C. § 1182(a)(6)(E)(ii) (family reunification waiver). Conversely, the BIA has held that when a parent *abandons* his or her permanent resident status, minor children of the parent also lose permanent resident status. *Matter of Zamora*, 17 I & N Dec. 395 (BIA 1980).

Finally, we find support for our analysis in the one Court of Appeals case to have considered the issue before us now: *Rosario v. INS*, 962 F.2d 220 (2d Cir.1992).[9] Rosario

---

seven consecutive years." Act of Feb. 5, 1917, ch. 29, § 3, 39 Stat. 878 (repealed 1952).

**8.** We note that in replacing the "seventh proviso" with section 212(c) and adding the permanent residence requirement, Congress did not remove the term "domicile."

**9.** We note that the Second Circuit has rejected our analysis in *Castillo–Felix* and held that an alien can begin accruing "lawful unrelinquished domicile" prior to attaining permanent resident status. *Lok v. INS*, 548 F.2d 37 (2nd Cir.1977). The analysis in *Rosario*, however, does not rely on *Lok*, but rather on the common law definition

claimed he was twelve years old when his mother established domicile in the United States in February, 1983, and that he arrived in the United States and attained permanent resident status ten months later, in December, 1983.[10] He pled guilty in 1989 to selling a controlled substance and possession of stolen property. At his deportation hearing in September, 1990 he was found deportable and requested section 212(c) relief, arguing that although seven years had not passed since he himself had entered the country or been granted permanent residence, seven years had passed since his mother had established her domicile in the United States, and that her domicile should be imputed to him, as he was a minor at the time.

The Second Circuit agreed. The court first embarked on an extended discussion of the common law definition of domicile, *Rosario*, 962 F.2d at 223–24 (citing *Holyfield*); *see also Melian*, 987 F.2d at 1524 (similar discussion of domicile; also citing *Holyfield*), and held, as do we, that

> A minor's domicile is the same as that of its parents, since most children are presumed not legally capable of forming the requisite intent to establish their own domicile.

*Rosario*, 962 F.2d at 224 (citing *Holyfield*). On this basis, the court concluded that Rosario might have been domiciled in the United States during the ten months when his mother was allegedly domiciled here but he still lived in the Dominican Republic. The issue of law having been resolved in Rosario's favor, a factual question remained as to whether his mother was, as claimed, domiciled in the United States as of February, 1983.[11] The court remanded for that determination. *Id.* at 225.

## III.

The BIA's interpretation of section 212(c), which would require children to themselves obtain permanent resident status before their lawful domicile could accrue, ignores the common law and common sense definitions of "domicile," and subverts section 212(c)'s core policy. We therefore hold that parents' "lawful unrelinquished domicile" should be imputed to their minor children under section 212(c).[12] Persons like Lepe–Guitron (who arrived with his parents but attained permanent resident status in his own name later than they) and Rosario (who both arrived and attained permanent resident status in his own name after his mother) would therefore be eligible for discretionary relief if, at the time of their deportation hearing, their parents had been lawfully domiciled in the United States for at least seven years.

In Lepe–Guitron's case, as in Rosario's, the record does not show whether his parents have accrued seven years of lawful unrelinquished domicile. We remand for such determination with instructions that if his parents are found to have the requisite lawful unrelinquished domicile, he should be considered eligible for section 212(c) relief.

Lepe–Guitron's petition is GRANTED, and the matter is REMANDED with instructions.

---

of a child's domicile, and on the fact that section 212(c)'s policy concerns are uniquely implicated in the case of children.

10. The court recognized that Rosario's claims had not been established or refuted before the BIA, but treated them as true for the purposes of the appeal. When the court ultimately granted the petition, it remanded for the necessary factual findings. *Rosario*, 962 F.2d at 225.

11. The inquiry did not go to whether Rosario's mother was a permanent resident of the United States as of that date, as it would in this Circuit, because in the Second Circuit an alien can establish lawful domicile prior to acquiring permanent residency. *Lok*, 548 F.2d at 40–41.

12. This holding applies only if the child obtains permanent resident status prior to reaching majority, not only because the statute affords relief only to permanent residents, but also for two additional reasons. First, the parents' domicile should not be imputed to a person who does not immigrate to the United States until he or she is an adult, since such a person would necessarily have an intervening period of lawful domicile in their country of origin. Second, if an alien child has joined his or her parents in the United States prior to reaching majority, but has not secured permanent residency by that time, there will necessarily be a "gap" in that person's lawful domicile, rendering it no longer "unrelinquished" (because for adults, in this Circuit, "lawful unrelinquished domicile" can only be accrued as a permanent resident).

**RYMER, Circuit Judge, dissenting:**

However felicitous the majority's result appears to be in the case of children, we have previously ratified the BIA's long-standing policy that "to be eligible for [§ 212(c) ] relief, aliens must accumulate seven years of lawful unrelinquished domicile after their admission for permanent residence." *Castillo–Felix v. INS*, 601 F.2d 459, 467 (9th Cir. 1979). It is undisputed that, at the time of the hearing before the IJ, Lepe–Guitron had accumulated less than four years of "lawful unrelinquished domicile after [his] admission for permanent residence." *Id.* This should end the matter and we should deny the petition for review.

Instead, the majority accepts the reasoning of *Rosario v. INS*, 962 F.2d 220 (2d Cir.1992), which took the view that "lawfully admitted for permanent residence" and "lawful unrelinquished domicile of seven consecutive years," as used in § 212(c), "are separate and independent conditions, neither [of which] purports to limit or qualify the other." *Id.* at 223. On this reading of the statute, the Second Circuit has long held "that Congress planned for a permanent resident alien to be eligible for § 212(c) relief, provided that person can meet the *domicile* condition." *Id.* (emphasis added) (citing *Lok v. INS*, 548 F.2d 37, 41 (2d Cir.1977)).

In *Castillo–Felix*, however, we parted company with the Second Circuit's statutory interpretation, expressly rejecting *Lok*'s conclusion that Congress did not intend the seven years of lawful domicile to follow admission for permanent residence. 601 F.2d at 467.[1] Hence, even assuming Lepe–Guitron was "domiciled" where his parents lived, under *Castillo–Felix*, simply meeting the domicile condition is not enough; the alien must, in addition, thereafter accumulate seven years as a lawful permanent resident to be eligible for discretionary relief.

The BIA's consistent reading of § 212(c) has tied the word "lawful," as Congress used it to qualify "domicile," to the requirement that the alien be "lawfully admitted for permanent residence." *Castillo–Felix* approves the BIA's interpretation, and there is no reason to undo that rule in this case. I therefore dissent.

---

1. Contrary to the majority's view, maj. op. at n. 9, *Rosario* does rely on *Lok*—just as the majority implicitly relies on that case today. The *Rosario* court began its discussion with a restatement of the *Lok* rule—that "lawfully admitted for permanent residence" and "lawful unrelinquished domicile of seven consecutive years" are independent conditions and "that Congress planned for a permanent resident alien to be eligible for § 212(c) relief, provided that person can meet the domicile condition." 962 F.2d at 223. The court then proceeded with its discussion of im-

puting to a minor the domicile of her or his parents. *Id.* at 223–25. *Rosario*'s conclusion—that the minor might be eligible for § 212(c) relief based on his parents' unrelinquished domicile in the United States—was dependent on *Lok*, since the court's exclusive focus with respect to the seven-year time frame was on the alien's "domicile" rather than his admission for permanent residence. *Castillo–Felix*, in contrast, accepts the BIA's interpretation that the two requirements must be considered together.