**Jose Luis MERCADO–ZAZUETA, Petitioner,**

v.

**Eric H. HOLDER Jr., Attorney General, Respondent.**

No. 07–71428.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 2008.

Filed Sept. 8, 2009.

---

Randy J. Tunac, Allen & Tunac, PLLC, Phoenix, AZ, for the petitioner.

Charles E. Canter, Office of Immigration Litigation, U.S. Department of Justice, Civil Division, Washington, D.C., for the respondent.

Before JEROME FARRIS, SUSAN P. GRABER,* and KIM McLANE WARDLAW, Circuit Judges.

Opinion by Judge WARDLAW; Concurrence by Judge GRABER.

WARDLAW, Circuit Judge:

We must decide whether our decision in *Cuevas–Gaspar v. Gonzales*, 430 F.3d 1013 (9th Cir.2005), compels the conclusion that a parent's status as an alien lawfully admitted for permanent residence may be imputed to an unemancipated minor child residing with that parent, for purposes of satisfying the five-year permanent residence requirement for cancellation of removal under section 240A(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(a)(1). Because the rationale and holding of *Cuevas–Gaspar* apply equally to the five-year permanent residence and the seven-year continuous residence requirements, we conclude that it does.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jose Luis Mercado–Zazueta ("Mercado"), a native and citizen of Mexico, entered the United States as a visitor in 1992, at the age of seven. With the exception of a brief 2005 vacation, Mercado has remained in the country ever since. In 1992, his mother married Ramon Mercado

---

* Judge Susan P. Graber was drawn to replace Judge William W Schwarzer pursuant to General Order 3.2(g). Judge Graber has read the briefs, reviewed the record, and listened to the recording of oral argument held on December 8, 2008.

Cuevas ("Ramon"), who had been a lawful permanent resident of the United States since 1983. Ramon legally adopted Mercado in 1998, when he was thirteen years old. Mercado obtained independent lawful permanent resident status in 2002, at the age of seventeen, and has three siblings: a U.S. citizen brother, a U.S. citizen sister, and a lawful permanent resident sister.

In 2006, Mercado pled guilty to one count of aggravated assault in the Superior Court of Arizona. *See* Ariz.Rev.Stat. § 13–1204. The United States Department of Homeland Security ("DHS") initiated removal proceedings against him shortly afterward. Mercado conceded removability under section 237 of the INA, 8 U.S.C. § 1227(a)(2)(A)(i)(I), as an alien "convicted of a crime involving moral turpitude committed within five years ... after the date of admission," but applied for cancellation of removal under INA § 240(a), 8 U.S.C. § 1229b(a).[1] The immigration judge pretermitted the application, finding Mercado ineligible for cancellation and ordering his removal to Mexico.

Mercado timely appealed to the Board of Immigration Appeals ("BIA"). In an unpublished decision, the BIA declined to apply *Cuevas–Gaspar* to allow imputation for the five-year permanent residence requirement, and dismissed Mercado's appeal. *In re Mercado–Zazueta*, A 75–504–958, 2007 WL 1195899 (BIA Mar. 29, 2007). Mercado filed a timely petition for review on April 13, 2007.

## II. JURISDICTION AND STANDARD OF REVIEW

Under 8 U.S.C. § 1252(a)(2)(D), we have jurisdiction to review constitutional claims and questions of law involved in the otherwise discretionary decision to deny cancel-

lation of removal. *See Mota v. Mukasey*, 543 F.3d 1165, 1167(9th Cir.2008). Although we review de novo questions of law, we defer to the BIA's interpretation of immigration laws unless the interpretation is "clearly contrary to the plain and sensible meaning of the statute." *Id.* (internal quotation marks omitted). We review the BIA's denial of a motion to reopen for an abuse of discretion. *Cardoso–Tlaseca v. Gonzales*, 460 F.3d 1102, 1106 (9th Cir. 2006). "An abuse of discretion will be found when the denial was arbitrary, irrational or contrary to law." *Oh v. Gonzales*, 406 F.3d 611, 612 (9th Cir.2005) (internal quotation marks omitted).

## III. DISCUSSION

### A. Mercado's Eligibility for Cancellation of Removal

1. *Imputation of Status, Intent, and State of Mind to Unemancipated Minor Children*

"[B]oth the BIA and this court repeatedly have held that a parent's status, intent, or state of mind is imputed to the parent's unemancipated minor child in many areas of immigration law, including asylum, grounds of inadmissibility, and legal residency status." *Cuevas–Gaspar*, 430 F.3d at 1024; *see also, e.g., Vang v. INS*, 146 F.3d 1114, 1116–17(9th Cir.1998) (imputing a parent's "firm resettlement" under 8 C.F.R. § 1208.15 to a sixteen-year-old minor); *Senica v. INS*, 16 F.3d 1013, 1015–16 (9th Cir.1994) (imputing a parent's knowledge of ineligibility for admission to that parent's minor children to deny their application for discretionary admission under 8 U.S.C. § 1182(k)); *Matter of Huang*, 19 I. & N. Dec. 749, 750 n. 1 (BIA 1988)

---

**1.** Title 8 U.S.C. § 1229b(a) provides for cancellation of removal for a permanent resident who "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony."

("Abandonment of lawful permanent resident status of a parent is imputed to a minor child who is subject to the parent's custody and control." (citing *Matter of Winkens*, 15 I. & N. Dec. 451 (BIA 1975))). As we have recently explained, "[w]e have allowed imputation precisely because the minor either was legally incapable of satisfying one of these criteria or could not reasonably be expected to satisfy it independent of his parents." *Ramos Barrios v. Holder*, 567 F.3d 451, 463 (9th Cir. 2009).[2] On several occasions, we have confronted situations in which a parent would qualify for relief under section 240A(a) or its predecessor, section 212(c),[3] while a child who at all times had been in the physical custody of that parent would not. In recognition of the fundamental concerns motivating this form of discretionary relief, we have consistently imputed a parent's satisfaction of the provision's status requirements to the unemancipated minor children in that parent's custody.

#### a. Section 212(c) and Lepe–Guitron

In *Lepe–Guitron*, we considered whether, "under section 212(c), a parent's lawful unrelinquished domicile is imputed to his or her minor children." 16 F.3d at 1022. Concluding that imputation was appropriate, we first distinguished our holding in *Castillo–Felix* that " 'to be eligible for [section 212(c) ] relief, aliens must accumulate seven years of lawful unrelinquished domicile *after their admission for perma-*

*nent residence.*' " *Id.* at 1024(quoting *Castillo–Felix v. INS*, 601 F.2d 459, 467 (9th Cir.1979)). In light of "crucial differences" between Castillo–Felix, who had entered the United States illegally and acquired permanent resident status only after marrying, and Lepe–Guitron, who had entered legally with his parents and was "always legally within the country," but nevertheless "acquired permanent resident status . . . many years after his parents achieved it," we concluded that *Castillo–Felix* did not foreclose the possibility of imputation. *Id.* On the contrary, we found a "number of persuasive reasons to hold that a child's 'lawful unrelinquished domicile' under section 212(c) is that of his or her parents." *Id.*

First, we observed that the "position espoused by the government would subvert the fundamental policies animating section 212(c)." *Id.* Severing the "bonds between parents and their children who had resided legally in the United States for the better part of their lives" would frustrate the section's "just and humane goal of providing relief to those for whom deportation would result in peculiar or unusual hardship." *Id.* at 1024–25 (citations and internal quotation marks omitted). Thus, "section 212(c)'s core policy concerns would be directly frustrated by the government's proposal to ignore the parent's domicile in determining that of the child." *Id.* at 1025. The existence of other "sections of the INA giving a high priority to

---

**2.** In *Ramos Barrios,* we declined to impute a parent's "physical presence" for purposes of satisfying the requirement set forth in 8 C.F.R. § 1240.66(b)(2). *See Ramos Barrios,* 567 F.3d at 460–66. In declining to impute physical presence, we stressed that "the definition of 'physical presence' does not require a specific status, intent, or state of mind," *id.* at 464 (internal quotation marks omitted), unlike the terms at issue in *Lepe–Guitron v. INS*, 16 F.3d 1021 (9th Cir.1994), *Cuevas–Gaspar,* and our other imputation precedent, *see Ramos Barrios,* 567 F.3d at 463.

**3.** INA section 240A(a), 8 U.S.C. § 1229b(a), governs cancellation of removal for permanent residents. The provision was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, § 304(b), 110 Stat. 3009–597 (Sept. 30, 1996), to replace and modify a similar form of relief previously available under INA section 212(c), 8 U.S.C. § 1182(c) (repealed 1996). *See also INS v. St. Cyr,* 533 U.S. 289, 297, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

the relation between permanent resident parents and their children" lent strength to this analysis.[4] *Id.*

Second, Congress's use of the term "domicile" reinforced the imputation of this form of status, because children are, "legally speaking, incapable of forming the necessary intent to remain indefinitely in a particular place," *id.*, and thus cannot determine their own domicile, *id.* at 1025–26. We therefore held that "parents' 'lawful unrelinquished domicile' should be imputed to their minor children under section 212(c)." *Id.* at 1026 (quoting 8 U.S.C. § 1182(c)). The Second and Third Circuits, the only other circuits to consider this issue before IIRIRA repealed section 212(c), reached the same conclusion, imputing a parent's accumulation of lawful unrelinquished domicile to that parent's minor children. *See Rosario v. INS,* 962 F.2d 220, 222–25 (2d Cir.1992); *Morel v. INS,* 90 F.3d 833, 840–42 (3d Cir.1996), *vacated on other grounds,* 144 F.3d 248 (3d Cir.1998).

b. *Section 240A(a) and* Cuevas–Gaspar

We first considered the possibility of imputation under section 240A(a) in *Cuevas–Gaspar. See* 430 F.3d at 1021–29. Facing removal due to a 2002 conviction for a crime involving moral turpitude, Cuevas–Gaspar satisfied section 240A(a)(1)'s five-year permanent residence requirement.

However, the IJ found him ineligible for cancellation of removal because he had not satisfied section 240A(a)(2)'s seven-year continuous residence requirement, although he had lived in the United States since 1985, when he was one year old. *Id.* at 1016–17; 8 U.S.C. § 1229b(a)(1), (2). The BIA affirmed in a reasoned opinion, rejecting Cuevas–Gaspar's argument that *Lepe–Guitron* allowed the imputation of his mother's continuous residence as a permanent resident to satisfy the seven-year requirement. *Cuevas–Gaspar,* 430 F.3d at 1017, 1021.

Because the BIA interpreted section 240A(a) in its opinion, we applied *Chevron* deference in our review, asking "(1) whether 'the statute is silent or ambiguous with respect to the specific issue,' and if so (2) whether the agency's interpretation is based on a reasonable, permissible construction of the statute." *Cuevas–Gaspar,* 430 F.3d at 1021(quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). After concluding that section 240A(a) is silent regarding imputation, *id.* at 1022, we took up the "tools of statutory construction" to assess "whether the BIA's interpretation of § 1229b(a) as being unamenable to imputation is a reasonable

**4.** We explained the high priority given to alien children in the context of visa preferences and waiver:

Sections 1152 and 1153, which allocate the annual quota of immigrant visas, provide a preference for the alien children of United States residents and citizens. 8 U.S.C. §§ 1152(a)(4), 1153(a)(1) & (2). In considering applications for permanent resident status, a child residing outside the United States is given the same priority date and preference category as that of his or her parents. [8 C.F.R. § 1245.1(e)(vi)(B)(1)]. The Act even provides a waiver of excludability for certain immigrants who have helped their alien children enter the United

States illegally. 8 U.S.C. § 1182(a)(6)(E)(ii) (family reunification waiver).

*Lepe–Guitron,* 16 F.3d at 1025; *see also Solis–Espinoza v. Gonzales,* 401 F.3d 1090, 1094 (9th Cir.2005) ("The [INA] was intended to keep families together. It should be construed in favor of family units and the acceptance of responsibility by family members."); H.R.Rep. No. 85–1199, pt. 2 (1957), *reprinted in* 1957 U.S.C.C.A.N.2016, 2020 (stating that the "legislative history of the [INA] clearly indicates that the Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united").

one," *id.* at 1024. Examining *Lepe–Guitron,* the legislative history of section 240A(a), and the statutory framework of the INA, we concluded that the BIA's interpretation was unreasonable, *see id.* at 1024–29, and held that "for purposes of satisfying the seven-years of continuous residence 'after having been admitted in any status' required for cancellation of removal under 8 U.S.C. § 1229b(a), a parent's admission for permanent resident status is imputed to the parent's unemancipated minor children residing with the parent," *id.* at 1029.

### 2. The Statutory Framework and Congressional Intent

Before its repeal, section 212(c) provided that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General." 8 U.S.C. § 1182(c) (repealed 1996).[5]

In applying section 212(c), the courts of appeals developed conflicting interpretations of its requirement that permanent residents demonstrate "a lawful unrelinquished domicile of seven consecutive years." *Id.* Our circuit and the Fourth Circuit followed the BIA's longstanding interpretation, restricting the accumulation of "lawful unrelinquished domicile" to immigrants who had been admitted for permanent residence. *See Castillo–Felix,* 601 F.2d at 467; *Chiravacharadhikul v. INS,* 645 F.2d 248, 249–51 (4th Cir.1981); *Matter of S.,* 5 I. & N. Dec. 116, 117–18 (BIA 1953). The Second, Third, and Seventh Circuits disagreed, concluding that the domicile requirement could be satisfied by lawful domicile prior to admission as a lawful permanent resident, so long as the immigrant was also eventually admitted for permanent residence. *See Lok v. INS,* 548 F.2d 37, 39–41 (2d Cir.1977); *Morel,* 90 F.3d at 837–40; *Castellon–Contreras v. INS,* 45 F.3d 149, 152–54 (7th Cir.1995). The Fifth, Tenth, Eleventh, and D.C. Circuits discussed the conflicting interpretations, but did not decide the issue. *See Madrid–Tavarez v. INS,* 999 F.2d 111, 112–13 (5th Cir.1993); *Onwuneme v. INS,* 67 F.3d 273, 274 n. 1 (10th Cir.1995); *Melian v. INS,* 987 F.2d 1521, 1523–25 (11th Cir.1993); *Anwo v. INS,* 607 F.2d 435, 436–38 (D.C.Cir.1979).

The legislative history confirms that by enacting IIRIRA, Congress intended to address, among other things, the circuits' varying interpretations of section 212(c). In 1995, the Senate had considered a predecessor bill to IIRIRA entitled the Immigration Enforcement Improvements Act, S. 754, 104th Cong. (1995). *See* 141 Cong. Rec. S6082–04, S6092 (May 3, 1995). In Title III, section 309(b)(1), the bill set forth a cancellation of removal provision with the same basic requirements as section 240A(a): five years of permanent residence and seven years of continuous residence.[6] In a section-by-section analysis of

---

**5.** Although section 212(c) "applies by its terms only to exclusion proceedings under subsection (a) of § 1182, judicial decisions ... extended its reach to deportation proceedings." *Lepe–Guitron,* 16 F.3d at 1023; *see also St. Cyr,* 533 U.S. at 294–97, 121 S.Ct. 2271.

**6.** Section 309(b) provided, in relevant part:

The Attorney General may cancel deportation in the case of an alien who is deportable from the United States and:
(1) is and has been a lawful permanent resident for at least 5 years who has resided in the United States continuously for 7 years after being lawfully admitted and has not been convicted of an aggravated felony or felonies for which the alien has been sentenced, in the aggregate, to a term of imprisonment of at least 5 years.

the bill, the U.S. Department of Justice stated that section 309(b) "would clarify an area of the law regarding the cutoff periods for these benefits that have given rise to significant litigation and different rules being applied in different judicial circuits." 141 Cong. Rec. at S6104.

Section 240A(a) resolved the section 212(c) circuit split with the same compromise that had been proposed in the Immigration Enforcement Improvements Act, requiring at least five years of residence after being "lawfully admitted for permanent residence" and seven years of continuous residence "after having been admitted in any status." 8 U.S.C. § 1229b(a)(1), (2). It is thus apparent that, in enacting section 240A(a), Congress "intended to clear up a longstanding disagreement between the various courts of appeals and the BIA regarding the type of status necessary to qualify for relief under former § 212(c)." *Cuevas–Gaspar*, 430 F.3d at 1027; *see also Garcia–Quintero v. Gonzales*, 455 F.3d 1006, 1016 (9th Cir.2006) ("Ultimately, Congress designed the dual requirement of a five-year legal permanent residency *and* seven-year continuous residence in any status, § 1229b(a)(1)(2), to clear up prior confusion and to strike a balance between the conflicting interpretations . . . by counting a limited period of time spent in non-permanent status while still requiring at least five years of perma-

nent resident status." (internal quotation marks omitted)).[7]

Moreover, it is equally apparent that Congress's modifications to section 212(c) were not intended to alter the availability of imputation to the unemancipated minor children of parents who qualified for relief. The circuits did not split as to the underlying policy objectives motivating section 212(c), but simply over the type of status necessary to satisfy "lawful unrelinquished domicile." Therefore, the fundamental goal underlying this discretionary remedy—"to provide relief from deportation for those who have lawfully formed strong ties to the United States," *Lepe–Guitron*, 16 F.3d at 1025—was unaffected by this clarification of the requirements to secure that relief.

### 3. The BIA's Decision in In re Mercado-Zazueta

■ In denying Mercado's direct appeal in an unpublished disposition, the BIA declined to apply our holding in *Cuevas–Gaspar* to the five-year residence requirement in section 240A(a)(1). *In re Mercado–Zazueta*, 2007 WL 1195899. In a 2007 published opinion, the BIA also expressed its disagreement with the reasoning of *Cuevas–Gaspar. See In re Escobar*, 24 I. & N. Dec. 231, 233–35 (BIA 2007).[8] However, the holding, reasoning, and logic of

---

141 Cong. Rec. at S6098. The similarity between this provision and section 240A(a) is readily apparent.

7. In enacting section 240A, Congress also intended to make cancellation of removal unavailable to lawful permanent residents who had been convicted of aggravated felonies. *See* 8 U.S.C. § 1229b(a)(3); *Cuevas–Gaspar*, 430 F.3d at 1027 (citing *St. Cyr*, 533 U.S. at 297, 121 S.Ct. 2271). However, this change sheds no further light on Congress's intent regarding the other requirements of section 240A(a).

8. Because the BIA's published, precedential decisions warrant greater deference, and because the two decisions rely on the same reasoning to reach their conclusions, we discuss both in our analysis, but focus primarily on *In re Escobar. See Marmolejo–Campos v. Holder*, 558 F.3d 903, 909 (9th Cir.2009) (en banc) ("[W]e have held that the Board's precedential orders, which bind third parties, qualify for *Chevron* deference because they are made with a lawmaking pretense. We have not accorded *Chevron* deference to the Board's unpublished decisions, however, because they do not bind future parties." (internal quotation marks and citations omitted)).

*Cuevas–Gaspar* apply equally to the resident status requirements of both section 240A(a)(1) and 240A(a)(2), and thus imputation of the custodial parent's status to the minor is compelled.

### a. *Our Deference to the BIA*

It is "well-established that Congress delegated to the BIA the authority to promulgate rules, on behalf of the Attorney General, that carry the force of law 'through a process of case-by-case adjudication.'" *Garcia–Quintero,* 455 F.3d at 1012 (quoting *INS v. Aguirre-Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999)). However, "only 'selected decisions of the Board rendered by a three-member panel or by the Board en banc may be designated to serve as precedents.'" *Id.* at 1013(quoting 8 C.F.R. § 1003.1(g)). Although the BIA's published, three-member decision in *In re Escobar* requires *Chevron* deference, we have previously applied *Chevron* to find the BIA's interpretation of section 240A(a) unreasonable. *See Cuevas–Gaspar,* 430 F.3d at 1021–29. Indeed, when scrutinized, the BIA's decision in *In re Escobar,* as well as its decision in *In re Mercado–Zazueta,* cannot fairly be characterized as a "new" interpretation of section 240A(a), but is rather the same unreasonable interpretation we rejected in *Cuevas–Gaspar.*

### b. *The Requirement of "Lawful" Admission for Permanent Residence and the Question of Congressional Intent*

Contrary to the government's assertion, *Cuevas–Gaspar* is controlling precedent for the imputation of "lawful permanent resident *status* from a parent to a child." *In re Escobar,* 24 I. & N. Dec. at 234. Further, although "lawfully admitted for permanent residence" is a term of art, defined in 8 U.S.C. § 1101(a)(20) as "the status of having been lawfully accorded the privilege of residing permanently in the

United States as an immigrant in accordance with the immigration laws, such status not having changed," it does not follow that allowing imputation for the five-year permanent residence requirement would "run contrary to the clear intent of Congress." *In re Escobar,* 24 I. & N. Dec. at 234; *cf. In re Mercado–Zazueta,* 2007 WL 1195899.

First, review of the plain language of the statute demonstrates that both sections 212(c) and 240A(a)(1) use a variant of the word "lawful" in setting out their requirements. Section 212(c) required "lawful unrelinquished domicile," and section 240A(a)(1) requires an applicant to have been "lawfully admitted for permanent residence." Thus, the emphasis on section 240A(a)(1)'s requirement of being *"lawfully admitted"* is clearly misplaced. *In re Escobar,* 24 I. & N. Dec. at 234. If the change from requiring seven years of "domicile" to seven years of residence "after having been admitted" did not preclude imputation, *see Cuevas–Gaspar,* 430 F.3d at 1025–26, surely the change from *"lawful unrelinquished domicile"* to *"lawfully admitted for permanent residence"* should have no such effect. Indeed, when we decided *Lepe–Guitron,* we had already held that "'to be eligible for [section 212(c)] relief, aliens must accumulate seven years of lawful unrelinquished domicile *after their admission for permanent residence.'"* 16 F.3d at 1024(quoting *Castillo–Felix,* 601 F.2d at 467). Thus, by allowing imputation for minor children to satisfy the domicile requirement, *Lepe–Guitron* "necessarily held that a parent's admission to permanent resident status is imputed to the child" for purposes of section 212(c) relief. *Cuevas–Gaspar,* 430 F.3d at 1026. Accordingly, although the status requirement in section 240A(a)(1) is distinct, the distinction is not relevant, and we again conclude that the change in terminology is "not ... so great as to be dispositive." *Id.*

Second, because Mercado actually has been admitted for permanent residence, it is beyond dispute that·he has satisfied the substantive and procedural requirements of admission· for· permanent residence.[9] He has failed to satisfy only the five-year component of this requirement, which was imposed to probe the duration of an alien's lawful ties to the United States. *See Cuevas–Gaspar,* 430 F.3d at 1028–29.·

Similarly, the BIA's decision· in *In re Escobar* is flawed in two critical·respects: The decision is factually inaccurate in implying that Escobar had not satisfied the mandated statutory and regulatory application process and the substantive eligibility requirements for admission. *In re Escobar,* 24 I. & N. Dec. at 234. The decision also erroneously suggests that imputing status for the sole purpose. of assessing eligibility for cancellation of removal necessarily requires imputing in other contexts and with regard to other forms of relief. *See id.* at 234 n. 4. The BIA incorrectly asserts. that "if imputation of a parent's lawful permanent residence would allow a minor alien to fulfill the requirements for cancellation of removal, the child would never have to become a lawful permanent resident in his own right." *Id.* at 235. This is simply not the case. *See also In re Mercado–Zazueta,* 2007 WL 1195899("[I]f imputation is all that is needed, why would an alien ever need to be a lawful permanent resident in his own right? Moreover, why would an alien ever need an admission or period of United States residence or presence?"). The possibility of cancellation arises only when removal proceedings have been initiated. On the other hand, those who attain lawful permanent resident status acquire many more bene-

fits than the one isolated avenue to relief from· removal, including eligibility for employment, the right to live permanently in the United States, the ability to vote in state and local elections that do not require U.S. citizenship, the ability to travel freely within and without the United States, and the ability to pursue U.S. citizenship. Because imputing a parent's status for purposes of cancellation would convey none of these other significant and desirable benefits, the BIA's reasoning in *In re Escobar* and *In re Mercado–Zazueta,* that imputation for cancellation would obviate an immigrant's desire for lawful permanent resident status, misapprehends the nature of that status.

Finally, the BIA mistakenly asserts that allowing imputation under section 240A(a)(1) would be "inconsistent with the purpose of the [INA] and the intent of Congress when it amended the statute to add the relief of cancellation of removal for certain permanent residents." *In re Escobar,* 24 I. & N. Dec. at 233. If section 240A(a)'s silence regarding imputation suggests anything, it suggests that Congress acquiesced in the unanimous practice of the circuits to consider the issue, all of which had found imputation appropriate under section 212(c). Regardless, in light of the statutory scheme and legislative history of section 240A(a), allowing imputation for both the five- and seven-year requirements would not "essentially destroy the distinct tests mandated by Congress when it amended the statute." *Id.* at 234. On the contrary, the distinct tests were created to resolve a circuit split that did not concern imputation. *See Cuevas–Gaspar,* 430 F.3d at 1027. As discussed, section 240A(a) was only intended to clarify

---

9. The petitioner in *In re Escobar,* Kattia Guadalupe Escobar ("Escobar"), had also satisfied these requirements for admission. *See* 24 I. & N. Dec. at 231. We therefore do not consider the imputation of lawful permanent resident status to an unemancipated minor who has never been admitted for permanent residence.

"the *type of status* necessary to qualify for relief." *Id.* (emphasis added). Therefore, unlike the "physical presence" at issue in *Ramos Barrios*, which does not include "an element of status, intent, or state of mind," 567 F.3d at 464, the status requirements of section 212(c) and section 240A(a) are equally amenable to imputation.

Moreover, even with imputation, the requirements of subsections 240A(a)(1) and (2) remain distinct, as all applicants for cancellation of removal as permanent residents are still required to demonstrate both five years spent as a lawful permanent resident and seven years of residence after admission in any status.[10] Applicants who have spent time in the United States as the unemancipated minor children of lawful permanent resident parents merely have an alternative mechanism to demonstrate that they satisfy these distinct requirements—a mechanism that is wholly consistent with, if not compelled by, the statutory scheme. *See Cuevas–Gaspar*, 430 F.3d at 1029(noting the well-established "congressional policy of recognizing that presence in the United States of an extended length gives rise to such strong ties to the United States that removal would result in undue hardship"). Thus, allowing imputation to satisfy section 240A(a)(1)'s five-year requirement would not be contrary in any way to congressional intent.

#### c. *The BIA's Consistent Willingness To Impute in Other Contexts*

In *In re Escobar*, the BIA claimed that its prior decisions do "not support the automatic imputation of lawful permanent resident status from parent to child," noting that the cases cited in *Cuevas–Gaspar* "all deal with aliens whose relatives abandoned their lawful permanent resident status and the resulting imputation of the abandonment of that status." 24 I. & N. Dec. at 234 n. 4. The BIA identifies two reasons why this distinction is relevant.

First, the BIA notes that imputing the abandonment of permanent resident status is consistent with the "longstanding policy that a child cannot form the intent necessary to establish his or her own domicile." *Id.* This observation lacks relevance; it is a distinction without a difference. The argument appears to be that the abandonment of permanent resident status requires intent, and therefore imputation is appropriate, whereas the acquisition of permanent resident status does not require intent, so imputation is not appropriate. But we know of no authority for the proposition that intent, standing alone, is the touchstone of imputation analysis. In *Cuevas–Gaspar*, we dealt with a more cogent version of this argument. *See* 430 F.3d at 1025. There, we rejected the assertion that the status of "admission" could not be imputed because, "unlike domicile, which depends on intent or capacity, 'admission' does not depend on either intent or capacity." *Id.* Indeed, the BIA attempted to recycle this argument in *In re Mercado–Zazueta*, claiming that "unlike domicile, which depends on intent or capacity, admission does not depend on either the intent or the capacity of the minor, but rather on inspection and authorization by an immigration officer." 2007 WL 1195899. As *Cuevas–Gaspar* suggests, it is unreasonable to impute the abandonment of permanent resident status while refusing to impute the acquisition of such status under section 240A(a). *See* 430 F.3d at 1025.

---

10. For example, an unemancipated minor who spent seven years in the United States with parents who had not attained lawful permanent resident status might be able to satisfy the seven-year requirement through imputation, but would not be able to satisfy the five-year requirement.

Thus, while unemancipated minors may be technically capable of attaining lawful permanent resident status without their parents' assistance, it is not reasonable to expect them to do so. The imputation of both domicile and permanent resident status to minor children is appropriate, so far as cancellation of removal is concerned, "precisely because the minor either [is] legally incapable of satisfying one of these criteria or could not reasonably be expected to satisfy it independent of his parents." *Ramos Barrios*, 567 F.3d at 463.

Second, the government's insistence that "acquiring lawful permanent resident status, with the attendant eligibility requirements, is necessarily more complicated than abandoning such status," *In re Escobar*, 24 I. & N. Dec. at 234 n. 4, is similarly not probative. As noted, there is no dispute that both Escobar and Mercado satisfied the "attendant eligibility requirements" to acquire permanent resident status. Moreover, the fact that it may be more complicated to acquire permanent resident status than to abandon it does not provide any indication as to whether imputation is more appropriate for one than the other. If there is any reasonable conclusion to be drawn from that fact, it is that the complications associated with acquiring permanent resident status favor imputation, as minor children are less equipped to deal with those complications on their own.

Accordingly, the BIA's explanation of its inconsistent imputation practices remains " 'so unclear or contradictory that we are left in doubt as to the reason for the change in direction.' " *Marmolejo–Campos*, 558 F.3d at 914(quoting *Morales–Izquierdo v. Gonzales*, 486 F.3d 484, 493(9th Cir.

2007) (en banc)). In light of this ill-explained and apparently arbitrary inconsistency, *Cuevas–Gaspar*'s interpretation of section 240A(a) continues to receive support from the observation that the BIA "repeatedly [has] held that a parent's status, intent, or state of mind is imputed to the parent's unemancipated minor child in many areas of immigration law, including asylum, grounds of inadmissibility, and legal residency status." 430 F.3d at 1024.

### d. The BIA's Interpretation of Section 240A(a)(1) Is Unreasonable

We acknowledge that, at *Chevron's* second step, "[d]eference to an agency's interpretation is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." *Morales–Izquierdo*, 486 F.3d at 492 (internal quotation marks omitted). Further, "[a]t step two ... our function is 'not simply [to] impose[our] own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, ... the question for the court is whether the agency's answer is based on a permissible construction of the statute.' " *Id.* at 492–93(alteration in original) (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778).

With this framework in mind, *Cuevas–Gaspar* compels the conclusions that imputation under section 240A(a)(1) is appropriate and that a contrary interpretation of the statute is not permissible.[11] While agencies retain discretion to fill ambiguous statutory gaps, it does not follow that an agency may repeatedly put forward an interpretation that we already have exam-

---

11. It is noteworthy that at least one member of the BIA has also reached this conclusion, albeit in an unpublished decision. *See In re Guerra*, No. A77 988 500, 2007 WL 1129369 (BIA Feb. 13, 2007). We note also that the

Third Circuit recently repudiated the logic and holding of *Cuevas–Gaspar. See Augustin v. Attorney Gen.*, 520 F.3d 264 (3d Cir.2008). We are nonetheless bound to follow our circuit precedent.

ined under *Chevron* and found unreasonable at its second step.

 Moreover, the BIA's interpretation of the statute remains demonstrably contrary to the fundamental purposes motivating the discretionary relief Congress made available in section 240A(a). Mercado has spent almost his whole life within the United States. When Mercado was legally adopted at the age of thirteen, he easily could have adjusted his own status with the assistance of his parents. Not only is it absurd to penalize Mercado for his parents' failure to assist him with the adjustment process, but it flies in the face of common sense to conclude that a lawful permanent resident such as Mercado, who has spent the vast majority of his life in this country, cannot be eligible for cancellation of removal, which is premised on the longstanding "congressional policy of recognizing that presence in the United States of an extended length gives rise to such strong ties to the United States that removal would result in undue hardship." *Cuevas–Gaspar*, 430 F.3d at 1029(citing S.Rep. No. 1515, 81st Cong., 2d Sess. 383 (1950)).[12] Further, if Mercado had never attained lawful permanent resident status, his eligibility for cancellation of removal would have been governed by section 240A(b), under which he easily would have established that he had been "physically present in the United States for a continuous period of not less than 10 years." 8 U.S.C. § 1229b(b)(1)(A). Accordingly, we hold that, for purposes of satisfying the five years of lawful permanent residence required under INA section 240A(a)(1), 8 U.S.C. § 1229b(a)(1), a parent's status as a lawful permanent resident is imputed to the unemancipated minor children residing with that parent.

e. Brand X *and* Duran Gonzales *Do Not Alter Our Analysis at* Chevron's *Second Step*

The BIA recently relied on *In re Escobar* to deny imputation for section 240A(a)(2)'s seven-year requirement within our circuit, directly conflicting with our holding in *Cuevas–Gaspar*. *See Matter of Ramirez–Vargas*, 24 I. & N. Dec. 599 (BIA 2008). In *Matter of Ramirez–Vargas*, the BIA applied the Supreme Court's decision in *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) ("*Brand X*"),[13] and our decision in *Duran Gonzales v. DHS*, 508 F.3d 1227

12. As Mercado's mother put it, in a letter submitted to DHS along with Mercado's application for cancellation of removal:

[Mercado] has been raised here since he was a little boy, always attending school and trying to do everything that could help him be successful in this country. His social life, professional life, personal life, everything about his life is based on this culture, on the American way of living. He has always been very intelligent and goal oriented striving to reach these goals. As soon as he graduated high school he went to college while also having a job. He almost attained his degree in Computer Aided Drafting since he only needed one semester to get his Associates Degree. He is a good boy, very noble and it saddens me to see him detained with his goals lost and his future about to be taken away from him. Even though he can be sent free and sent to another country, his goals, his life, his home, his everything is HERE. Taking that away from him is like taking away everything.

The fundamental motivating purpose behind section 240A(a), as illuminated above, is to aid precisely those such as Mercado who have lawfully built their entire lives in this country.

13. In *Brand X*, the Supreme Court held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." 545 U.S. at 982, 125 S.Ct. 2688.

(9th Cir.2007),[14] to conclude that its subsequent interpretation of section 240A(a) in *In re Escobar* had undermined the precedential value of *Cuevas–Gaspar. See Matter of Ramirez–Vargas,* 24 I. & N. Dec. at 599–601. We disagree.

The BIA's reliance on *Brand X* and *Duran Gonzales* in *Matter of Ramirez–Vargas* is misplaced. Most notably, in *Brand X* itself, in reaching the prior decision at issue, *AT&T Corp. v. Portland,* 216 F.3d 871 (9th Cir.2000), our court had not even considered an agency interpretation of the Communications Act, nor had we applied *Chevron* deference when we interpreted the statute. *See id.* at 876("We note at the outset that the FCC has declined, both in its regulatory capacity and as amicus curiae, to address the issue before us. Thus, we are not presented with a case involving potential deference to an administrative agency's statutory construction pursuant to the *Chevron* doctrine."). Indeed, the FCC was not even a party in *Portland. See Brand X,* 545 U.S. at 980, 125 S.Ct. 2688. Accordingly, when we authored the decision that the Supreme Court reversed in *Brand X,* we did not employ a deferential review of an agency interpretation at *Chevron*'s second step. *See Brand X Internet Servs. v. FCC,* 345 F.3d 1120, 1130–32(9th Cir.2003), *rev'd,* 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). Rather, as the Supreme Court observed, we "declined to apply *Chevron* because [we] thought the Commission's in-

terpretation of the Communications Act [was] foreclosed by the conflicting construction of the Act [we] had adopted in *Portland." Brand X,* 545 U.S. at 982, 125 S.Ct. 2688.

Similarly, in *Duran Gonzales,* we observed that our previous decision in *Perez–Gonzalez* had "clearly relied on the agency regulations to reconcile the inadmissibility provision with the special adjustment provision." .508 F.3d at 1238. Thus, *Perez–Gonzalez* "did not 'foreclose[ ] the agency's interpretation' of the statutory scheme, but rather relied on the regulations to both reject an informal agency interpretation of the inadmissibility provision and reach [its] holding." *Id.* (quoting *Brand X,* 545 U.S. at 983, 125 S.Ct. 2688). Accordingly, our conclusion in *Duran Gonzales* that the BIA's new interpretation of these regulations was "clearly reasonable" did not directly contravene the *Perez–Gonzalez* analysis, which was premised on a different interpretation of the same underlying regulations. *See id.* at 1242; *see also Perez–Gonzalez,* 379 F.3d at 794 ("In the absence of a more complete agency elaboration of how its interpretation of § 212(a)(9) can be reconciled with its own regulations, we must defer to the regulations rather than to the informal guidance memorandum.").

In sum, neither *Brand X* nor *Duran Gonzales* suggests that an agency may resurrect a statutory interpretation that a circuit court has foreclosed by rejecting it as unreasonable at *Chevron*'s second step.[15] As both *Brand X* and *Duran Gon-*

**14.** In *Duran Gonzales,* we considered a conflict between our interpretation of certain provisions of IIRIRA in *Perez–Gonzalez v. Ashcroft,* 379 F.3d 783 (9th Cir.2004), and the BIA's subsequent interpretation of the same provisions in *In re Torres–Garcia,* 23 I. & N. Dec. 866 (BIA 2006). Relying on *Brand X,* 545 U.S. at 980–82, 125 S.Ct. 2688, we determined that so long as *Perez–Gonzalez* was "based, at least in part, on ambiguity in the applicable statutes," our deference to the BIA's interpretation was required. *Duran*

*Gonzales,* 508 F.3d at 1236. After ascertaining that, "despite some language to the contrary, *Perez–Gonzalez* was based on a finding of statutory ambiguity that left room for agency discretion," *id.* at 1237, we concluded we were not bound by *Perez–Gonzalez* but "must defer to *In re Torres–Garcia if its interpretation of the governing statute is reasonable," id.* at 1239 (emphasis added).

**15.** Indeed, the *Brand X* majority's reasoning confirms this conclusion. After pronouncing its general holding that a "court's prior judi-

*zales* acknowledged, under *Chevron,* an agency's interpretation of a statute it is charged with administering must be reasonable. *See Brand X,* 545 U.S. at 997–1000, 125 S.Ct. 2688; *Duran Gonzales,* 508 F.3d at 1241–42. In contrast to the prior decisions at issue in *Brand X* and *Duran Gonzales,* the *Cuevas–Gaspar* panel considered and rejected the precise interpretation of section 240A(a) that the BIA precedentially resurrected in *In re Escobar* and extended in *Matter of Ramirez–Vargas.* Our review of the BIA's published decision in *In re Escobar,* as well as its unpublished decision in *In re Mercado–Zazueta,* remains bound by the ongoing validity of our holding in *Cuevas–Gaspar.*

## CONCLUSION

Viewing section 240A within the context of the INA, *Cuevas–Gaspar* compels the conclusion that the BIA's interpretation of section 240A(a)(1) is unreasonable. It is perhaps worth noting that, in so holding, we do not guarantee that Mercado and others in his situation may remain in the United States. On the contrary, we merely grant access to the possibility of cancellation of removal, leaving the ultimate determination to the sound discretion of the Attorney General.

**PETITION GRANTED and REMANDED for further proceedings consistent with this opinion.**

cial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision … follows from the unambiguous terms of the statute," 545 U.S. at 982, 125 S.Ct. 2688, the Court observed:

A contrary rule would produce anomalous results. It would mean that whether an agency's interpretation of an ambiguous statute is entitled to *Chevron* deference would turn on the order in which the inter-

GRABER, Circuit Judge, concurring:

I concur fully in Judge Wardlaw's opinion. I write separately to express my concern with both the BIA's current rule and our holding in *Cuevas–Gaspar v. Gonzales,* 430 F.3d 1013 (9th Cir.2005).

To qualify for cancellation of removal, a person must have had permanent resident status for five years, 8 U.S.C. § 1229b(a)(1), and must have had continuous residence under "any" legal immigration status for seven years, *id.* § 1229b(a)(2). The Board of Immigration Appeals ("BIA") has interpreted those requirements strictly: A parent's legal status cannot be imputed to a child.

The BIA's rule is undeniably harsh. Its effect is to remove children who have lived in the United States for at least seven years and whose parents have had permanent resident status for at least five years. Moreover, the children may have arrived here at a very young age and have no ties to the designated country of removal. The children may not speak the language, know anyone there, or have any connection other than the country name on their birth certificates. The BIA's rule faults these children because their parents, for whatever reason, chose not to seek legal status for the children at the same time that they themselves sought legal status.

In *Cuevas–Gaspar,* 430 F.3d at 1021–29, we declined to afford the BIA's interpretation of the seven-year continuous residence requirement deference under the second

pretations issue: If the court's construction came first, its construction would prevail, whereas if the agency's came first, the agency's construction would command *Chevron* deference.

*Id.* at 983, 125 S.Ct. 2688. Thus, because the BIA interpreted section 240A(a) before we did, and this interpretation has already received *Chevron* deference, the concerns underlying *Brand X* are simply inapposite.

step of *Chevron* analysis because, in our view, the BIA's interpretation was unreasonable. In *In re Escobar*, 24 I. & N. Dec. 231, 235 (B.I.A.2007), the BIA held that it would not "extend" our holding in *Cuevas–Gaspar* to the five-year permanent residence requirement. But, for present purposes, there is no relevant distinction between a parent's status for the five-year permanent residence requirement and a parent's status for the seven-year continuous residence requirement. For the reasons expressed in the opinion, *Cuevas–Gaspar* controls and we must conclude that the BIA's interpretation is unreasonable.

Despite the harshness of the BIA's current rule, and despite the equal or greater reasonableness of a less harsh rule, I think that, as a matter of statutory interpretation and *Chevron* deference, *Cuevas–Gaspar* was wrongly decided. If not for *Cuevas–Gaspar*, I would conclude that, under the demanding standard of *Chevron* deference, the BIA's interpretation is reasonable. I am not alone. *See Cuevas–Gaspar*, 430 F.3d at 1031–32 (Fernandez, J., dissenting); *Augustin v. Attorney Gen.*, 520 F.3d 264, 269–72 (3d Cir.2008) (disagreeing with *Cuevas–Gaspar* and holding to the contrary). Judge Fernandez' dissent in *Cuevas–Gaspar* and the Third Circuit's unanimous decision in *Augustin* aptly explain why the BIA's interpretation is reasonable when considering *Chevron* deference. That conclusion is particularly warranted because "judicial deference to the Executive Branch is especially appropriate in the immigration context." *INS v. Aguirre–Aguirre*, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999); *see also Chen v. Mukasey*, 524 F.3d 1028, 1033 (9th Cir.2008) ("Deference is especially appropriate in the context of immigration law, where national uniformity is paramount." (internal quotation marks omitted)).[1]

Were the question not already decided by *Cuevas–Gaspar*, then, I would feel constrained as a judge to defer to the BIA's interpretation of the statute. Unless and until the BIA reverses course or Congress fills the gap in the immigration laws, we must defer to the agency's expertise—my personal misgivings notwithstanding.

---

**1.** The BIA has stated that it "will ... not follow [*Cuevas–Gaspar*] in cases arising outside the jurisdiction of the Ninth Circuit." *In re Escobar*, 24 I. & N. Dec. at 235. Thus, its rule is uniform everywhere except the Ninth Circuit.